UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
SALVATORE J. GRECO

                                Plaintiff,

      -against-

THE CITY OF NEW YORK; KEECHANT L. SEWELL, as
Police Commissioner, Police Department City of New York;
ERNEST F. HART, as Deputy Commissioner Legal Matters,
Police Department City of New York; DANIEL S. CUTTER,
as Commanding Officer, Internal Affairs Bureau Group No.: 25
and JEREMY D. ORENSTEIN, as Sergeant, Internal Affairs
Bureau Group No.: 25, each sued individually and in their official
capacities as employees of The City of New York

                            Defendants'
-------------------------------------------------------------------------x

**AMENDED COMPLAINT**

**JURY DEMAND**

22 cv 5109

      The Plaintiff SALVATORE J. GRECO through his attorney The Sanders Firm, P.C., files

this amended federal complaint against Defendants' THE CITY OF NEW YORK; KEECHANT

L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN

respectfully set forth and allege that:

## **INTRODUCTION**

      This is an action for equitable relief and money damages on behalf of the Plaintiff

SALVATORE J. GRECO, (hereinafter referred to as "Plaintiff") because Defendants' THE CITY

OF NEW YORK; KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and

JEREMY D. ORENSTEIN collectively investigated and terminated him due to his personal

'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of

the OATH Keepers, Proud Boys and others who support Trump's America and the political

paradigm of Making America Great Again in violation of the First Amendment – Freedom of

Speech Right to Intimate Association, Political Affiliation and New York Labor Law § 201-d (2)(a) Outside Political Activities.

## JURISDICTION AND VENUE

1.     The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

      a.     the Civil Rights Act of 1871, 42 U.S.C. § 1983

      b.     New York Labor Law § 201-d (2)(a)

2.     The unlawful employment practices, violations of plaintiff's civil rights complained of herein were committed within the Eastern and Southern Districts of New York and the District of Columbia.

## PROCEDURAL REQUIREMENTS

3.     Plaintiff has filed suit with this Court within the applicable statute of limitations period.

4.     Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871 or New York Labor Law § 201-d (2)(a).

## PLAINTIFF

5.     Plaintiff SALVATORE J. GRECO is a male citizen of the United States of America, over twenty-one (21) years of age and resident of Broward County, Florida.

## DEFENDANTS'

6.     Defendant THE CITY OF NEW YORK, is a municipal corporation and public employer, duly incorporated pursuant to the laws of the State of New York with its principal place of business located within the County of New York.

7.     Defendant KEECHANT L. SEWELL, as Police Commissioner, Police

Department City of New York.

8.    Defendant ERNEST F. HART, as Deputy Commissioner Legal Matters, Police
Department City of New York.

9.    Defendant DANIEL S. CUTTER, as Commanding Officer, Internal Affairs
Bureau Group No.: 25.

10.   Defendant JEREMY D. ORENSTEIN, as Sergeant, Internal Affairs Bureau
Group No.: 25.

## Arrest Record Data in the So-Called Land of the 'Free'

11.   Plaintiff alleges that according to the Brennan Center for Justice, more than
seventy (70) million adults in the United States have a criminal record.

12.   Plaintiff alleges that regardless of a former arrestee's legal status, these
individuals struggle to participate in our society due to value judgments and other social stigmas.

13.   Plaintiff alleges that after years of stagnation, various policy initiatives have
attempted to manage the construction of criminal record stigma to reduce reintegration barriers,
and subsequent recidivism, driven by 'labeling.'

14.   Plaintiff alleges that in April of 2016, the Department of Justice (DOJ) adopted a
policy that changes the language used to describe individuals with criminal records, substituting
person-first terms (e.g., "person with a felony") for crime-first terms (e.g., "felon" or
"offender").

15.   Plaintiff alleges that the Equal Employment Opportunity Commission (EEOC)
has issued guidelines to structure how decision-makers use criminal records.

16.   Plaintiff alleges that for years, various social institutions such as family,
government, religion, education and media shape the *alleged* roles, norms, and expectations,

which functions to meet the social needs of society. Thus, such social institutions play a significant role in dehumanizing former arrestees from integrating back into society.

## NYPD 'Political' Abuse of its' Statutory Authority

17.     Defendant KEECHANT L. SEWELL, is the Police Commissioner, Police Department City of New York and authorized agent acting on behalf of Defendant THE CITY OF NEW YORK.

18.     Defendant THE CITY OF NEW YORK designates the Police Department City of New York (NYPD) as a mayoral agency to engage in law enforcement activities with the general public and to manage its employees including handling disciplinary matters.

19.     Defendant THE CITY OF NEW YORK, is a municipal corporation and public employer, duly incorporated pursuant to the laws of the State of New York with its principal place of business located within the County of New York.

20.     Plaintiff alleges that under § 14-115(a) of the New York City Administrative Code, the Commissioner "shall have power, in his or her discretion, on conviction by the commissioner, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by reprimand, forfeiting and withholding pay for a specified time, suspension without pay during such suspension, or by dismissal from the force." Moreover, while the Commissioner has delegated to other bodies the responsibility of reviewing, investigating, and prosecuting complaints, as well as making disciplinary recommendations to h[er], [s]he has retained complete power and discretion to modify disciplinary decisions.

21.     Plaintiff alleges that under § 14-137(a) of the New York City Administrative Code, the Commissioner, and his or her deputies shall have the power to issue subpoenas, attested in the name of the commissioner and to exact and compel obedience to any order, subpoena or mandate issued by them and to that end may institute and prosecute any proceedings or action authorized by law in such cases. The commissioner, and his or her deputies may in proper cases issue subpoena duces tecum. The commissioner may devise, make and issue process and forms of proceedings to carry into effect any powers or jurisdiction possessed by him or her.

22.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK; KEECHANT L. SEWELL and ERNEST F. HART operate NYPD Legal Matters which *allegedly* provides assistance to law enforcement personnel regarding department legal matters. The bureau *allegedly* assists members of the service in interpreting and enforcing state, federal, and local laws; ensures that the policies and practices of the department are lawful and are fairly applied.

23.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL operates the Internal Affairs Bureau (IAB) which is *allegedly* dedicated to preserving integrity of the NYPD.

24.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL operates the Office of the Department Advocate which *allegedly* prosecutes civilian and uniformed members of the service accused of violating department policies.

25.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL operates the Office of the Deputy Commissioner of Trials which *allegedly* ensures that members of the Department are held to the highest standard of conduct and to conduct fair and impartial disciplinary trials.

26.     Plaintiff alleges that on or about June 21, 2018, former Police Commissioner James P. O'Neill appointed an "Independent Panel" to conduct a "review" of the internal disciplinary system of the NYPD or "Department" and to propose recommendations to improve it.

27.     Plaintiff alleges that according to the report summary, the "Panel" consisted of the Honorable Mary Jo White, its chair; the Honorable Robert L. Capers; and the Honorable Barbara S. Jones.

28.     Plaintiff alleges that according to the report summary, to carry out its mandate, the "Panel" allegedly surveyed "Department" policies and procedures governing how internal disciplinary cases are initiated, prosecuted, and resolved.

29.     Plaintiff alleges that on or about January 25, 2019, in the final report, the "Panel" included a section relating to allegations of systemic favoritism, bias, or significant inconsistencies.

30.     Plaintiff alleges that according to the "Panel," "in any adjudicatory system, allegations of systemic favoritism, bias, or significant inconsistencies strike at the core of its legitimacy."

31.     Plaintiff alleges that previously in or around December 2003, the NYPD agreed to implement legal strategies to ensure "transparency" and a "fair" disciplinary process free of "racial" and "national origin" bias.

32.     Plaintiff alleges that according to the terms of the LOA settlement, the NYPD agreed to establish an advisory committee – which will include members of the LOA—that will meet quarterly to address employment discrimination and retaliation. Improvements will also be made to the NYPD's disciplinary database, which will allow officers, union representatives and

lawyers to easily monitor whether disciplinary action in a current matter matches that taken for similar incidents in the past.

33.     Plaintiff alleges that alleges that since the <u>LOA</u> settlement, for the past eighteen (18) years to this date, NYPD officers persist with their complaints regarding "lack of transparency" and a "fair" disciplinary process free of "racial" and "national origin" bias.

34.     Plaintiff alleges that thus far, the NYPD have denied officers, union representatives and lawyers, access to the disciplinary data to ensure "transparency" and a "fair" disciplinary process free of "racial" and "national origin" bias.

35.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL'S operation of Legal Matters, Internal Affairs, Office of the Department Advocate and Trials are in contravention of the First Amendment – Freedom of Right to Intimate Association and First Amendment – Freedom of Speech.

36.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL enforce NYPD Patrol Guide Procedure No.: 203-10, Page 1, Paragraph 2(a) PUBLIC CONTACT – PROHIBITED CONDUCT GENERAL REGULATIONS: "wrongfully and knowingly associated with any person or organization advocating hatred, oppression, or prejudice based on race, religion, gender, gender identity/expression, sexual orientation, or disability." This rule is 'overbroad' and its' application is in contravention of the First Amendment and must be stricken.

37.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL enforce NYPD Patrol Guide Procedure No.: 203-10, Page 1, Paragraph 2(c) PUBLIC CONTACT – PROHIBITED CONDUCT GENERAL REGULATIONS: "wrongfully and knowingly associated with a person, reasonably believed to be engaged in, likely to engage

in or to have engaged in criminal activities." This rule is 'overbroad' and its application is in contravention of the First Amendment and must be stricken.

38.     Plaintiff alleges that Defendant THE CITY OF NEW YORK for more than forty (40) years through the NYPD have intentionally 'abused' its statutory authority and the internal disciplinary process to discriminate against former NYPD Captain now Mayor Eric L. Adams, former NYPD Sergeant now Sheriff Anthony Miranda, members of the Guardians Association of the Police Department City of New York, Hispanic Society of the Police Department City of New York, and other disenfranchised members of the department including Greco because of their race, gender, 'familial' and 'political' relationships.

## The Allegations of Criminal Association and Subversive Activities

39.     Plaintiff alleges that on or about January 22, 2021, the Internal Affairs Bureau Command Center received an anonymous letter as follows: To whom it may concern – I am writing to the NYPD Internal Affairs Bureau about the D.C. take-ver. PO Salvatore Greco CTTF, and PO Gregory Nealon 60 pct., attended the riot at Capitol hill. These officers want to have a civil war in America.

40.     Plaintiff alleges that on or about January 22, 2021, the Internal Affairs Bureau Command Center received further information including pictures that he was 'associating' with Roger Jason Stone, Jr., a self-proclaimed "agent provocateur" who has served as strategic counsel to GOP candidates since the 1960s including President Donald J. Trump, the forty-fifth (45) president of the United States.

41.     Plaintiff alleges that on or about November 15, 2019, Roger Jason Stone, Jr., was convicted, in the United States District Court for the District of Columbia on an indictment (Docket No. 1: 1 9-cr-00018- ABJ• 1 ), of violations of Sections 2, 1001(a)(2), 1505, and

1512(b)(l), Title 18, United States Code, for which a total sentence of 40 months' imprisonment; two years' supervised release; a twenty thousand dollar ($20,000) fine; and a seven hundred dollar ($700) special assessment was imposed on February 20, 2020.

42.    Plaintiff alleges that on or about July 10, 2020, President Donald J. Trump commuted Roger Jason Stone, Jr's prison sentence, conditions of his supervised release and any unpaid reminder of the $20,000 fine imposed.

43.    Plaintiff alleges that on or about January 22, 2021, the Internal Affairs Bureau Command Center received further information including pictures that he was 'associating' with Kristin M. Davis, previously known as the Manhattan Madam, accused of operating a high-end prostitution ring catering to high-profile clients.

44.    Plaintiff alleges that on or about October 16, 2008, Kristin M. Davis pled guilty and ultimately was sentenced to four (4) months on Rikers Island for one count of promoting prostitution.

45.    Plaintiff alleges that on or about August 6, 2013, Kristin M. Davis was charged by Preet Bharara, the former United States Attorney for the Southern District of New York with the sale of prescription pills containing controlled substances, including oxycodone, for cash.

46.    Plaintiff alleges that on or about March 7, 2014, Kristin M. Davis pled guilty and ultimately was sentenced to twenty-four (24) months in prison.

47.    Plaintiff alleges that on or about January 22, 2021, the Internal Affairs Bureau Command Center opened Log No.: C-2021-0027 and 2021-1610. The 'C' designates that the investigation will likely conclude with the filing of criminal charges.

48.     Plaintiff alleges that the anonymous letter does not suggest he engaging in criminal activities much less with Roger Jason Stone, Jr., Kristin M. Davis or anyone else, the letter suggests "a civil war with America."

49.     Plaintiff alleges that the anonymous letter is 'political' in nature because of his first amendment right to support Trump's America and the 'political' paradigm of 'Making America Great Again.'

50.     Plaintiff alleges that nevertheless, Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL assigned Defendants' DANIEL CUTTER and JEREMY ORENSTEIN to conduct a criminal investigation into his 'political' activities.

51.     Plaintiff alleges that from January 22, 2021, through May 20, 2021, Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL through Defendants' DANIEL CUTTER and JEREMY ORENSTEIN conducted a criminal investigation into his 'political' activities.

52.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN interviewed Mr. Joshua Adam James via phone. Mr. Adams is a co-founder of the OATH Keepers, which is an *alleged* American far-right anti-government militia whose members claim to be defending the Constitution of the United States.

53.     Plaintiff alleges that Mr. Adams told Defendants' DANIEL CUTTER and JEREMY ORENSTEIN that Greco was in the District of Columbia from January 5 – 6, but did not partake in anything illegal or violent.

54.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN reviewed his social media accounts which contained numerous photographs with Roger Jason Stone, Jr.; Kristin M. Davis; Proud Boys

Members Ethan M. Nordean. Jacob Engels, and Henry Tarrio aka Enrique Tarrio, the Chairman of the Proud Boys. The Proud Boys is an *alleged* American far-right, neo-fascist, and exclusively male organization that promotes and engages in political violence in the United States.

55.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN reviewed his social media accounts which contained numerous photographs with OATH Keeper members Mr. Joshua Adam James and Roberto Minuta, who provided protection for Roger Jason Stone, Jr., on January 6, 2021.

56.     Plaintiff alleges that during the aforementioned time period, there is no activity on his social media accounts that indicate he was involved in any criminal or subversive activities to overthrow the United States government.

57.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN performed audits of several law enforcement databases maintained by the NYPD including DAS Lite which did not uncover improper inquiries inconsistent with its intended use or that support he was involved with criminal or subversive activities to overthrow the United States government.

58.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN with the support of Internal Affairs Bureau Group No.: 2, received a financial analysis of Greco's profile which indicated no transactions inconsistent with the lawful use of the American banking system or that support he was involved with criminal or subversive activities to overthrow the United States government.

59.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN audited his department cellular telephone records which did not uncover improper usage inconsistent with its intended use or that support

he was involved with criminal or subversive activities to overthrow the United States government.

60.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN performed an 'offline' search and his name was not queried by anyone in law enforcement or that support he was involved with criminal or subversive activities to overthrow the United States government.

61.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN reviewed his APD 5 aka the NYPD Background Investigation Pre-Employment Application Booklet and did not provide any investigative leads or that support he was involved with criminal or subversive activities to overthrow the United States government.

62.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN 'falsely' asserted to Defendant ERNEST F. HART the need for Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL to use its administrative subpoena powers under § 14-137(a) of the New York City Administrative Code, to investigate allegations of association narcotics (other than family), DRV – other – due to he *allegedly* attending the rioting on Capitol Hill, criminal association with Roger Jason Stone, Jr. (Trump advisor), Kristin M. Davis (Manhattan Madam – Prostitution) and OATH Keepers (Anti-government group).

63.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN'S 'false' assertions to Defendant ERNEST F. HART as mentioned in Paragraph No.: 62, are inconsistent with the initial Internal Affairs Bureau log.

64.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK; KEECHANT L. SEWELL and ERNEST F. HART 'fail' to maintain a system of checks and balances to ensure administrative subpoenas issued under § 14-137(a) of the New York City Administrative Code are legal, not overbroad, used for 'false' fishing expeditions, used for 'political' purposes or any other purpose inconsistent with the statute.

65.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN 'abusing' the administrative subpoenas powers under § 14-137(a) of the New York City Administrative Code, 'improperly' reviewed his cellular telephone records which did not support he was involved with criminal or subversive activities to overthrow the United States government.

66.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN 'abusing' the administrative subpoenas powers under § 14-137(a) of the New York City Administrative Code, 'improperly' reviewed his home telephone records which did not support he was involved with criminal or subversive activities to overthrow the United States government.

67.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN performed further audits of the DAS Lite database which did not uncover any improper inquiries of the Proud Boys, OATH Keepers or any other *alleged* rioter inconsistent with its intended use or that support he was involved with criminal or subversive activities to overthrow the United States government.

68.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN 'abusing' the administrative subpoenas powers under § 14-137(a) of the New York City Administrative Code, 'improperly' reviewed business

records from the Willard Intercontinental Hotel indicating he stayed there on January 5, 2021, but do not support he was involved with criminal or subversive activities to overthrow the United States government.

69.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN 'abusing' the administrative subpoenas powers under § 14-137(a) of the New York City Administrative Code, 'improperly' reviewed surveillance records from the Willard Intercontinental Hotel indicating he was present inside of the hotel along with Roger Jason Stone, Jr., and members of the OATH Keepers but do not support he was involved with criminal or subversive activities to overthrow the United States government.

70.     Plaintiff alleges that during the aforementioned time period, Defendants' DANIEL CUTTER and JEREMY ORENSTEIN with the support of Internal Affairs Bureau Group No.: 55, surveilled him off-duty on four (4) occasions and there is no indication that he was involved with criminal or subversive activities to overthrow the United States government.

71.     Plaintiff alleges that on or about April 27, 2021, Defendant DANIEL CUTTER signed Departmental Charges and Specifications approved by Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL thorough the Office of the Department Advocate, Department Advocate's Office Serial No.: 2021 – 23298, accusing him of "wrongfully and knowingly associating with person[s], Roger Jason Stone, Jr., and Kristin M. Davis, reasonably believed to be engaged in, likely to engage in, or to have engaged in criminal activities" along with related department charges.

72.     Plaintiff alleges that other than his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., and Kristin M. Davis, Defendants' DANIEL CUTTER and

JEREMY ORENSTEIN were unable to establish any 'credible' evidence he was involved in any criminal or subversive activities with them to overthrow the United States government.

73. Plaintiff alleges that other than his personal 'political' relationships with members of the OATH Keepers, Proud Boys, others who support Trump's America and the 'political' paradigm of 'Making America Great Again,' there is no 'credible' evidence he was involved in any criminal or subversive activities with them or anyone else to overthrow the United States government.

74. Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL through the Office of the Department Advocate prosecuted him on March 1, 23, 29 and April 4, 2022, accusing him of "wrongfully and knowingly associating with person[s], Roger Jason Stone, Jr., and Kristin M. Davis, reasonably believed to be engaged in, likely to engage in, or to have engaged in criminal activities" along with related department charges.

75. Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL through the Office of the Deputy Commissioner of Trials on March 1, 23, 29 and April 4, 2022, heard evidence accusing him of "wrongfully and knowingly associating with person[s], Roger Jason Stone, Jr., and Kristin M. Davis, reasonably believed to be engaged in, likely to engage in, or to have engaged in criminal activities" along with related department charges.

76. Plaintiff alleges that Roger Jason Stone, Jr., appeared to support him during the department trial, but he did not testify. Nor did the department take the opportunity to ask Roger Jason Stone, Jr., to provide sworn testimony regarding their relationship, etc.

77. Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL through the Office of the Deputy Commissioner of Trials despite receiving

'credible' evidence of his personal 'familial' and 'political' relationships with Roger Jason

Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys, others who support

Trump's America and the 'political' paradigm of 'Making America Great Again,' Assistant

Deputy Commissioner Paul M. Gamble failed to assess the 'political' charges in violation of the

First Amendment – Freedom of Speech Right to Intimate Association, Political Affiliation and New

York Labor Law § 201-d (2)(a) Outside Political Activities.

78.     Plaintiff alleges that on or about June 10, 2022, Assistant Deputy Commissioner

Paul M. Gamble recommended to Defendants' THE CITY OF NEW YORK and KEECHANT

L. SEWELL, to find Greco guilty of "wrongfully and knowingly associating with person[s],

Roger Jason Stone, Jr., and Kristin M. Davis, reasonably believed to be engaged in, likely to

engage in, or to have engaged in criminal activities" along with related department charges

except "wrongfully and knowingly associated with any person or organization advocating hatred,

oppression, or prejudice based on race, religion, gender, gender identity/expression, sexual

orientation, or disability."

79.     Plaintiff alleges that Assistant Deputy Commissioner Paul M. Gamble

recommended Greco be separated from the department because "Under the circumstances

established in the trial record, Respondent's [Plaintiff SALVATORE J. GRECO] continued

presence as a Member of the Service would be corrosive to the mission and values of this

Department."

80.     Plaintiff alleges that on or about August 4, 2022, Defendants' THE CITY OF

NEW YORK and KEECHANT L. SEWELL adopted Assistant Deputy Commissioner Paul M.

Gamble's recommendation and dismissed Greco under § 14-115(a) of the New York City

Administrative Code.

81.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL terminated him due to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great Again' in violation of the First Amendment – Freedom of Speech Right to Intimate Association, Political Affiliation and New York Labor Law § 201-d (2)(a) Outside Political Activities.

**The Select Committee to Investigate the January 6th Attack on the United States Capitol**

82.     Plaintiff alleges that on or about April 20, 2022, the Committee drafted an "*abusive'* subpoena to unlawfully review his cellular telephone records.

83.     Plaintiff alleges that shortly thereafter, the Committee using the United States Marshal Service, served the "*abusive*" subpoena upon Verizon Security Subpoena Compliance located in Bedminster, NJ.

84.     Plaintiff alleges that on or about April 25, 2022, Verizon Security Subpoena Compliance notified him about the "*abusive*" subpoena, although he was "alarmed" he knew it was nothing more than a "fishing expedition" related to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great Again' in violation of the First Amendment – Freedom of Speech Right to Intimate Association, Political Affiliation and New York Labor Law § 201-d (2)(a) Outside Political Activities.

85.     Plaintiff alleges that he knew he violated no laws nor did he participate in the so-called January 6th Attack on the United States Capitol.

86.     Plaintiff alleges that the Committee sought to unlawfully review his cellular telephone records from November 1, 2020 to January 31, 2021, including but not limited to: subscriber information, connection records, etc.

87.     Plaintiff alleges that on or about May 16, 2022, shortly after the conclusion of the department trial, he was compelled to provide deposition testimony to the Committee.

88.     Plaintiff alleges that interestingly, the Committee focused upon any alleged text messages between he, Roger Jason Stone, Jr., Kristin M. Davis, their associations with each other and connections to Infowars Alex Jones and other related political connections.

89.     Plaintiff alleges that he testified, he did not nothing wrong, nor did he ever work for Roger Jason Stone, Jr.

90.     Plaintiff alleges that he testified, he and Roger Jason Stone, Jr. are friends and family since 2018.

91.     Plaintiff alleges that he testified, although Roger Jason Stone, Jr., appeared to support him during the department trial, but he did not testify. Nor did the department take the opportunity to ask Roger Jason Stone, Jr., to provide sworn testimony regarding their relationship, etc.

92.     Plaintiff alleges that he testified, he knew nothing about whether Roger Jason Stone, Jr., assisted President Donald J. Trump with the 2020 Presidential election.

93.      Plaintiff alleges that he testified, he did not provide security to Roger Jason Stone, Jr.

94.     Plaintiff alleges that on or about December 22, 2022, the Committee issued its Final Report, House Report No.: 117-663.

95. Plaintiff alleges that the Committee recommended no congressional action against him nor did the Department of Justice recommend legal action against him.

**VIOLATIONS AND CLAIMS ALLEGED**

**COUNT I**
**FREEDOM OF SPEECH RIGHT TO INTIMATE ASSOCIATION**
**IN VIOLATION OF**
**THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

96. Plaintiff re-alleges Paragraphs 1 through 95 and incorporates them by reference as Paragraphs 1 through 95 of Count I of this Amended Complaint.

97. Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN collectively investigated and terminated him due to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again in violation of the First Amendment – Freedom of Speech Right to Intimate Association.

98. Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN'S condemnation of his protected First Amendment – Freedom of Speech Right to Intimate Association was a "motivating factor" which ultimately led to his termination from the NYPD.

99. Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN and their agents' actions caused him mental anguish, damage to his personal and professional reputation, and loss of employment opportunities.

## COUNT II
## FREEDOM OF SPEECH RIGHT TO POLITICAL ASSOCIATION
## IN VIOLATION OF
## THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

100.    Plaintiff re-alleges Paragraphs 1 through 99 and incorporates them by reference as Paragraphs 1 through 99 of Count II of this Amended Complaint.

101.    Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN collectively investigated and terminated him due to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again in violation of the First Amendment – Freedom of Speech Right to Political Association.

102.    Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN'S condemnation of his protected First Amendment – Freedom of Speech Right to Political Association was a "motivating factor" which ultimately led to his termination from the NYPD.

103.    Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN and their agents' actions caused him mental anguish, damage to his personal and professional reputation, and loss of employment opportunities.

## COUNT III
## MONELL CLAIM
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

104.    Plaintiff re-alleges Paragraphs 1 through 103 and incorporates them by reference as Paragraphs 1 through 103 of Count III of this Amended Complaint.

105. Plaintiff alleges that Defendant THE CITY OF NEW YORK for more than forty (40) years through the NYPD have intentionally 'abused' its statutory authority and the internal disciplinary process to discriminate against former NYPD Captain now Mayor Eric L. Adams, former NYPD Sergeant now Sheriff Anthony Miranda, members of the Guardians Association of the Police Department City of New York, Hispanic Society of the Police Department City of New York, and other disenfranchised members of the department including Greco because of their race, gender, 'familial' and 'political' relationships.

106. Defendant THE CITY OF NEW YORK through its agents Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN collectively investigated and terminated him due to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again in violation of the First Amendment – Freedom of Speech Right to Intimate Association, Political Affiliation and New York Labor Law § 201-d (2)(a) Outside Political Activities.

107. Plaintiff alleges that Defendant THE CITY OF NEW YORK through its agents Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN and their agents' actions caused him mental anguish, damage to his personal and professional reputation, and loss of employment opportunities.

**COUNT IV**
**POLITICAL ACTIVITIES**
**IN VIOLATION OF**
**NEW YORK LABOR LAW § 201-d**

108. Plaintiff re-alleges Paragraphs 1 through 107 and incorporates them by reference as Paragraphs 1 through 107 of Count IV of this Amended Complaint.

109.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK; KEECHANT L.

SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN

collectively investigated and terminated him due to his personal 'familial' and 'political'

relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers,

Proud Boys and others who support Trump's America and the political paradigm of Making

America Great Again in violation of New York Labor Law § 201-d (2)(a) Outside Political

Activities.

110.     Plaintiff alleges that Defendants' THE CITY OF NEW YORK; KEECHANT L.

SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN'S

condemnation of his protected outside political activities was a "motivating factor" which

ultimately led to his termination from the NYPD.

111.     Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART;

DANIEL S. CUTTER and JEREMY D. ORENSTEIN and their agents' actions caused him

mental anguish, damage to his personal and professional reputation, and loss of employment

opportunities.

### JURY TRIAL

112.     Plaintiff demands a trial by jury of all issues in this action that are so triable.

### PRAYER FOR RELIEF

Wherefore, Plaintiff demands compensatory and punitive damages from Defendants'

THE CITY OF NEW YORK; KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S.

CUTTER and JEREMY D. ORENSTEIN jointly and severally, in an amount to be determined at

trial; reinstatement to the position of Police Officer, Police Department City of New York

including all backpay and benefits; enjoin the enforcement of NYPD Patrol Guide Procedure

No.: 203-10, Page 1, Paragraph 2(a) PUBLIC CONTACT – PROHIBITED CONDUCT

GENERAL REGULATIONS: wrongfully and knowingly associated with any person or

organization advocating hatred, oppression, or prejudice based on race, religion, gender, gender

identity/expression, sexual orientation, or disability as constitutionally 'overbroad' in

contravention of the First Amendment; enjoin the enforcement of NYPD Patrol Guide Procedure

No.: 203-10, Page 1, Paragraph 2(c) PUBLIC CONTACT – PROHIBITED CONDUCT

GENERAL REGULATIONS: wrongfully and knowingly associated with a person, reasonably

believed to be engaged in, likely to engage in or to have engaged in criminal activities as

constitutionally 'overbroad' in contravention of the First Amendment; plus available statutory

remedies, both legal and equitable, interests and costs.

Dated: February 1, 2023
New York, N.Y.

Respectfully submitted,

By: _____
Eric Sanders

Eric Sanders, Esq.
**THE SANDERS FIRM, P.C.**
30 Wall Street, 8th Floor
New York, NY 10005
(212) 652-2782 (Business Telephone)
(212) 652-2783 (Facsimile)

Website: http://www.thesandersfirmpc.com