22 Civ. 5109 (FB)(VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SALVATORE J. GRECO,

Plaintiff,

- against -

CITY OF NEW YORK, ET AL.,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Andrea O'Connor*
*Tel:  (212) 356-4015*
*Matter No. 2022-053007*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. III

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT

    POINT I

        AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A FIRST AMENDMENT CLAIM ................................ 7

        A.  Intimate Association .......................................................... 7

        B.  Expressive Association .................................................... 11

            1.  No Protected Expressive Conduct Alleged ................................ 11

            2.  Association with Mr. Stone ........................................ 12

            3.  Association with Ms. Davis ........................................ 13

            4.  Association with Proud Boys, OATH Keepers and/or "Others" .......................... 13

            5.  No Public Concern ................................................ 14

            6.  *Pickering* Balancing Test ........................................ 14

    POINT II

        AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A NEW YORK LABOR LAW CLAIM ................................................................ 18

    POINT III

        AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A *MONELL* CLAIM ....................................... 19

    POINT IV

        THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................. 20

**Page**

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**                                                                       **Pages**

*Anderson v. Recore*,
    317 F.3d 194 (2d Cir. 2003)...................................................................................22

*Anemone v. Metro. Transp. Auth.*,
    629 F.3d 97 (2d Cir. 2011)....................................................................................15

*Bates v. Bigger*,
    192 F. Supp.2d 160 (S.D.N.Y.),
    *aff'd. mem.*, 56 Fed. Appx. 527 (2d Cir. 2002) ........................................................8

*Bermudez v. City of New York*,
    No. 10 CV 1162 (CM), 783 F. Supp. 2d 560
    (S.D.N.Y. Mar. 25, 2011) .....................................................................................19

*Berrios v. State Univ. of N.Y at Stony Brook*,
    518 F. Supp. 2d 409 (E.D.N.Y. 2007) .................................................................7, 9

*Blackman v. New York City Transit Authority*,
    491 F.3d 95 (2d Cir. 2007)....................................................................................14

*Board of Directors of Rotary International v. Rotary Club*,
    481 U.S. 537 (1987)...........................................................................................7, 10

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................................3

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986)...............................................................................................19

*City of Okla. City v. Tuttle*,
    471 U.S. 808 (1985)...............................................................................................20

*Cobb v. Pozzi*,
    363 F.3d 89 (2d Cir. 2003)....................................................................................11

*Connick v. Myers*,
    461 U.S. 138 (1983).........................................................................................12, 16

*Dupont v. New Jersey State Police*,
    2009 U.S. Dist. LEXIS 71990 (S.D.N.Y. Aug. 14, 2009)........................................8

**Cases**                                                                 **Pages**

*Dwares v. City of N.Y.*,
   985 F.2d 94 (2d Cir. 1993),
   *overruled on other grounds* by *Leatherman v. Tarrant Co. Narcotics*
   *Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ........................................................20

*Gallagher v. Bd. of Educ. of E. Hampton Union Free Sch. Dist.*,
   No. 16-CV-473, 2017 U.S. Dist. LEXIS 211264
   (E.D.N.Y. Dec. 21, 2017),
   *adopted by* 2018 U.S. Dist. LEXIS 21818 (E.D.N.Y. Feb. 9, 2018) .......................................9

*Giacalone v. Abrams*,
   850 F.2d 79 (2d Cir. 1988).............................................................................................. 21-22

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)............................................................................................................20

*Healy v. James*,
   408 U.S. 169 (1972)............................................................................................................11

*Heil v. Santoro*,
   147 F.3d 103 (2d Cir. 1998)...............................................................................................16

*Jeffries v. Harleston*,
   52 F.3d 9 (2d Cir. 1995)....................................................................................................16

*Lewis v. Cowen*,
   165 F.3d 154 (2d Cir. 1999)..........................................................................................15, 21

*Liu v. New York City Police Dep't*,
   216 A.D.2d 67 (1st Dep't 1995) .........................................................................................21

*Locurto v. Giuliani*,
   447 F.3d 159 ...............................................................................................................16, 17

*Martinez v. City of New York*,
   No. 06 CV 5671 (WHP), 2008 U.S. Dist. LEXIS 49023
   (S.D.N.Y. June 27, 2008),
   *aff'd sub nom, Martinez v. Muentes*,
   340 F. App'x 700 (2d Cir. 2009) .......................................................................................19

*McDonald v. Hempstead Union Free Sch. Dist.*,
   No. 18-CV-5658 (DRH)(SIL), 2019 U.S.
   Dist. LEXIS 108782 (E.D.N.Y. June 28, 2019) .....................................................................11

*Mitchell v. City of New York*,
   841 F.3d 72 (2d Cir. 2016)................................................................................................20

**Cases**                                                                                    **Pages**

*Monell v. Dep't of Social Services*,
   436 U.S. 658 (1978)..................................................................................19, 20

*Pappas v. Giuliani*,
   290 F.3d 143 (2d Cir. 2002),
   *cert. denied sub nom. Pappas v. Bloomberg*,
   539 U.S. 958 (2003).........................................................................................17

*Patel v. Searles*,
   305 F.3d 130 (2d Cir. 2002)..............................................................................7

*Pearson v. Callahan*,
   555 U.S. 223 (2009)........................................................................................21

*Pickering v. Board of Education*,
   391 U.S. 563 (1968)........................................................................14, 15, 16, 18

*Piscottano v. Murphy*,
   511 F.3d 247 (2d Cir. 2007)......................................................................11, 15

*Rankin v. McPherson*,
   483 U.S. 378 (1987)........................................................................................15

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984)..............................................................................7, 9, 11

*Sanitation and Recycling Indus., Inc. v. City of New York*,
   107 F.3d 985 (2d Cir. 1997)...............................................................................9

*Saucier v. Katz*,
   533 U.S. 194 (2001)........................................................................................21

*Silverstein v. Lawrence Union Free Sch. Dist. No. 15*,
   2011 U.S. Dist. LEXIS 34200
   (E.D.N.Y. Feb. 15, 2011)(collecting cases),
   *adopted by* 2011 U.S. Dist. LEXIS 34239
   (E.D.N.Y. Mar. 30, 2011)...............................................................................8, 9

*Simms v. City of New York*,
   480 F. App'x 627 (2d Cir. 2012) .....................................................................19

*Skehan v. Vill. of Mamaroneck*,
   465 F.3d 96 (2d Cir. 2006),
   *overruled on other grounds by Appel v. Spiridon*,
   531 F.3d 138 (2d Cir. 2008)............................................................................15

v

**Cases**                                                                                                    **Pages**

*Stalter v. Cty. of Orange*,
   No. 15-CV-5274, 2016 U.S. Dist. LEXIS 104237
   (S.D.N.Y. Aug. 5, 2016) .................................................................................................8

*Sulehria v. City of N.Y.*,
   670 F. Supp. 2d 288 (S.D.N.Y. 2009)...........................................................................22

*Waters v. Churchill*,
   511 U.S. 611 (1994)......................................................................................................16

**Statutes**

42 U.S.C. § 1983 ..................................................................................................1, 19, 21

Fed. R. Civ. P. 12(b)(6)........................................................................................................1

NYLL § 201-d.................................................................................................................1, 18

NYLL § 201-d(1)(a) ...........................................................................................................18

NYLL § 201-d(2)(a) ...........................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff, a former police officer employed by the New York City Police Department ("NYPD"), brings this action pursuant to 42 U.S.C. § 1983 and New York Labor Law § 201-d against the City of New York, the NYPD, and Keechant L. Sewell, Ernest F. Hart, Daniel Cutter and Jeremy Orenstein (collectively "defendants").  Plaintiff asserts that defendants violated his First Amendment rights by investigating and subsequently terminating him "due to his personal 'familial and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again."  Plaintiff further asserts that defendants violated NYLL § 201-d by discriminating against him based on political activity.

Defendants now move to dismiss the Second Amended Complaint ("SAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) on four grounds.  First, as a matter of law, plaintiff is unable to establish a First Amendment violation based on either an intimate association claim or an expressive conduct claim.  Plaintiff fails to plead a protected "intimate relationship" that would give rise to a cognizable intimate association claim and does not allege that he engaged in expressive or associational conduct of any sort, let alone that he was associating with Mr. Stone, Ms. Davis and/or members of the OATH Keepers and Proud Boys *for the purpose of* engaging in First Amendment protected activity.  Thus, his First Amendment claims fail as a matter of law.

Second, the SAC fails to state a claim under § 201-d of the New York State Labor Law because there are no allegations in the SAC that plaintiff engaged in "political" activities outside his working hours that would receive protection under the statute.  Thus, plaintiff's New York Labor Law claim must be dismissed as a matter of law.

Third, plaintiff fails to state a *Monell* claim against the City as he does not plausibly allege that a municipal policy or custom caused the violation of his constitutional rights. Fourth, and finally, the individual defendants in this action are entitled to qualified immunity.

Accordingly, for the reasons outlined below, defendants respectfully request that the Court grant their motion to dismiss in its entirety.

## STATEMENT OF FACTS

Plaintiff was served with disciplinary charges on or about April 27, 2021, alleging that he:

**Specification 1**: on or about between January 1, 2018 and March 22, 2021, wrongfully and knowingly associated with a person, Roger Stone, reasonably believed to be engaged in, likely to engage in or to have engaged in criminal activities;

**Specification 2**: on or about and between January 6, 2021, and January 6, 2021, wrongfully engaged in conduct prejudicial to good order, efficiency or discipline of the Department by, while armed, acting as security for a person or persons convicted of a crime;

**Specification 3**: on or about January 25, 2021 and/or March 22, 2021, failed to fully cooperate with the Internal Affairs Bureau investigators by providing incomplete or inaccurate answers or by being evasive or uncooperative during a Department interview;

**Specification 4**: on or about and between July 1, 2019 and March 22, 2021, wrongfully and knowingly associated with any person or organization advocating hatred, oppression, or prejudice based on race, religion, gender, gender identity/expression, sexual orientation or disability; and

**Specification 5**: on or about between January 1, 2018 and March 22, 2021, wrongfully and knowingly associated with a person, Kristin Davis, reasonably believed to be

engaged in, likely to engage in or to have engaged in criminal activities.  *See* SAC at ¶ 71; *see also* Ex. A, Disposition of Charges.[1] [2]

A four-day disciplinary trial was held before Paul M. Gamble, NYPD's Assistant Deputy Commissioner of Trials, at which plaintiff testified and was represented by counsel.  *See* SAC at ¶ 74; *see also* Ex. B, Report and Recommendation, dated June 10, 2022.  At the disciplinary trial, plaintiff testified that he became friends with Mr. Stone after commenting on one of Mr. Stone's Instagram posts in 2018.  *See* Ex. B at p. 14.  Plaintiff testified that he communicated with Mr. Stone over Instagram and met for the first time in 2018 at a restaurant in Manhattan.  *Id.* Plaintiff met Ms. Davis at the same time.  *Id.*  At his disciplinary trial, plaintiff described his relationship with Mr. Stone as "very close friends."  *Id.*

Mr. Stone was convicted of federal crimes[3] in or around November 2019, *see* SAC at ¶ 41, and plaintiff testified at his disciplinary trial that he continued to have contact with Mr. Stone between November 2019 and February 2020, including attending Mr. Stone's sentencing hearing on February 20, 2020.  *See* Ex. B at p. 15.  Plaintiff testified at his disciplinary trial that he was aware that Mr. Stone was convicted of federal crimes and that he continued to have contact

---

[1] All of defendants' exhibits referred to herein are annexed to the Declaration of Andrea O'Connor, dated April 20, 2023 ("O'Connor Declaration").

[2] The Court may consider the documents annexed to the O'Connor Declaration because they are referred to in the SAC, are in plaintiff's possession or are documents of which plaintiff has knowledge and relief upon in bringing this action.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (court resolving motion to dismiss may consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action.).

[3] *See* U.S. Department of Justice, Roger Stone Found Guilty of Obstruction, False Statements, and Witness Tampering at https://www.justice.gov/usao-dc/pr/roger-stone-found-guilty-obstruction-false-statements-and-witness-tampering (last accessed Apr. 20, 2023).

with Mr. Stone after his sentencing through text messages and phone calls.  *Id.* at p. 16.  Plaintiff also testified that he was aware that Ms. Davis had a criminal record[4] but continued to be in contact with her as well.  *See id.*

As to the disciplinary charges pertaining to January 5 and 6, 2021, plaintiff testified that on January 5, 2021, he and Joshua James met Mr. Stone and Ms. Davis at the airport in Washington D.C. and drove them to their hotel.  *See id.* at p. 17.  Joshua James is "a co-founder of the OATH Keepers, which is an alleged American far-right anti-government militia whose members claim to be defending the Constitution of the United States."  *See* SAC at ¶ 52.  During plaintiff's disciplinary trial, Defendant Jeremy Orenstein testified that, while investigating whether to bring disciplinary charges against plaintiff, he spoke to Mr. James regarding plaintiff and that Mr. James reported that he was the head of Mr. Stone's security detail and that plaintiff was present in Washington D.C. "assisting" Mr. Stone's security detail.  *See* Ex. B at p. 6.[5]  Plaintiff further testified that on the evening of January 5, 2021, he accompanied Mr. Stone to a barbershop and that he carried his off-duty firearm under his jacket in a concealed shoulder holster during this visit to the barbershop.  *Id* at p. 18.

---

[4] The SAC alleges that on or about October 16, 2008, Ms. Davis pled guilty and ultimately was sentenced to four (4) months on Rikers Island for one count of promoting prostitution.  *See* SAC at ¶ 44.  The SAC further alleges that on August 6, 2013, Ms. Davis was charged in the Southern District of New York with the sale of prescription pills containing controlled substances and that on March 7, 2014, Ms. David pled guilty and was sentenced to 24 months in prison.  *See id.* at ¶¶ 45-46.

[5] On March 22, 2022, Mr. James pled guilty to seditious conspiracy and obstruction of an official proceeding for his actions before, during and after the breach of the U.S. Capitol on January 6, 2021.  *See* U.S. Department of Justice, Leader of Alabama Chapter of Oath Keepers Pleads Guilty to Seditious Conspiracy and Obstruction of Congress for Efforts to Stop Transfer of Power Following 2020 Presidential Election at https://www.justice.gov/opa/pr/leader-alabama-chapter-oath-keepers-pleads-guilty-seditious-conspiracy-and-obstruction (last accessed Apr. 20, 2023).

Plaintiff testified that on January 6, 2021, he accompanied Mr. James to pick up "VIP tickets" for Mr. Stone for an event on the Ellipse. *Id.* Plaintiff testified that in attempting to retrieve the tickets, they encountered Secret Service agents. *Id.* Plaintiff showed the agents his NYPD identification and requested information about obtaining VIP tickets. *Id.* Plaintiff testified that he and Mr. James did not obtain the tickets for Mr. Stone and returned to the hotel where Mr. Stone and Ms. Davis were staying. *Id.* Mr. James expressed concerns about Mr. Stone attending the event on the Ellipsis. *Id.* Plaintiff testified that he concurred with this concern. *Id.* Plaintiff testified that he remained in the hotel room with Mr. Stone until he, unaccompanied by any other security personnel, drove Mr. Stone and Ms. Davis back to the airport. *Id.* at pp. 18, 24.

Following a four-day trial, ADC Gamble issued a Report and Recommendation. *See* Ex. B. With respect to the Specification 1 of the disciplinary charges, ADC Gamble found that Plaintiff admitted he was aware that Mr. Stone had been convicted of several federal crimes, including felonies, and that he continued to contact Mr. Stone after his conviction via phone calls and text messages. ADC Gamble found that while plaintiff described himself as "like a member of the [Stone] family," plaintiff "was not family in any legal sense" and Mr. Stone was "a stranger" to plaintiff until 2018 when plaintiff commented on Mr. Stone's Instagram posting. Ex. B at p. 21. Thus, ADC Gamble found plaintiff guilty of Specification 1. *Id.*

Similarly, with respect to Specification 5, ADC Gamble found that plaintiff admitted to knowing about Ms. Davis' prostitution-related felony conviction and federal drug conviction and that he continued to contact her via phone and text message after learning about her criminal history. *Id.* at p. 22. ADC Gamble thus found plaintiff guilty of Specification 5. *Id.*

As for Specification 2, while plaintiff testified that he was not part of Mr. Stone's security detail and was in Washington, D.C. to support Mr. Stone as a friend, ADC Gamble found

5

that the weight of the credible evidence established that plaintiff knowingly acted in coordination with Mr. Stone's security detail and did so while armed and Mr. James, who was Mr. Stone's head of security, identified plaintiff as working with him to provide security for Mr. Stone.  *Id.* at p. 24. ADC Gamble found that "providing armed security for a person convicted of a crime was prejudicial to [the NYPD's] good order, efficiency, and discipline" because doing so "raises serious questions about that officer's ability to maintain the public's trust."  *Id.* at p. 25.  ADC Gamble therefore found plaintiff guilty of Specification 2.

For Specification 3, ADC Gamble found that the credible evidence adduced at the disciplinary trial demonstrated that plaintiff failed to fully cooperate with NYPD investigations by providing "incomplete and/or inaccurate statements" during two separate departmental interviews. *Id.* at p. 28.  Thus, ADC Gamble found plaintiff guilty of this specification.  *Id.*

Finally, for Specification 4, ADC Gamble found that there was insufficient evidence, outside of photographs, that plaintiff knew that individuals he was associating with, namely members of the Oath Keepers and/or Proud Boys, were part of organizations advocating hatred, oppression or prejudice based on race, religion, gender/gender expression, sexual orientation or disability.  *Id.* at pp. 27-28.  This specification was therefore unsubstantiated.  *Id.*

As for a recommended penalty, ADC Gamble found that since plaintiff knowingly associated with convicted felons and provided armed security for a convicted felon, these circumstances "strongly suggest[] that [plaintiff] will forever be compromised in the eyes of the public and his fellow police officers."  *Id.* at p. 25.  Further, ADC Gamble found that plaintiff's "lack of candor during his Department interviews and his trial testimony clarifies that he guided by his own moral compass rather than the provisions of the Patrol Guide."  *Id.* at p. 32.  Thus, ADC Gamble held that plaintiff's "continued presence as a Member of Service would be corrosive

to the mission and values of this Department" and recommended his termination. *Id.* at 32. This recommendation was adopted by Commissioner Sewell and plaintiff was terminated from the NYPD effective August 4, 2022. *See* SAC at ¶ 80.

## ARGUMENT

### POINT I

### AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A FIRST AMENDMENT CLAIM

The United States Constitution affords protection to two distinct types of association, "intimate association" and "expressive association." *See Board of Directors of Rotary International v. Rotary Club*, 481 U.S. 537, 545-547 (1987). Plaintiff fails to plead a protected "intimate relationship" that would give rise to a cognizable intimate association claim and his expressive association claim fails as a matter of law because plaintiff does not allege that he engaged in associational conduct of any sort, let alone protected conduct.

**A.    Intimate Association**

The right of intimate association has been described by the Supreme Court as a right that protects intimate "highly personal relationships." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). The relationships sought to be protected are personal affiliations that "attend [to] the creation and sustenance of a family -- marriage . . . the raising and education of children . . . and cohabitation with one's relatives." *Id.* at 619. Factors to determine an intimate relationship under the First Amendment include cohabitation and the precise degree of kinship. *Berrios v. State Univ. of N.Y at Stony Brook*, 518 F. Supp. 2d 409, 418 (E.D.N.Y. 2007). Thus, the right of intimate association encompasses a marital relationship, as well as the familial relationships between parents, siblings and children. *Id.* at 17 *citing Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002). Where, however, the relationship sought to be protected falls outside of the familial arena,

7

it has been found not similarly protected. *Id. citing Bates v. Bigger*, 192 F. Supp.2d 160, 169-70 (S.D.N.Y.), *aff'd. mem.*, 56 Fed. Appx. 527 (2d Cir. 2002) (refusing to extend Constitutional protection to extramarital relationship between co-workers). Critically, "courts in the Second Circuit have not accepted intimate association claims based on friendships." *See Silverstein v. Lawrence Union Free Sch. Dist. No. 15*, 2011 U.S. Dist. LEXIS 34200 at *6 (E.D.N.Y. Feb. 15, 2011)(collecting cases), *adopted by* 2011 U.S. Dist. LEXIS 34239 (E.D.N.Y. Mar. 30, 2011); *Dupont v. New Jersey State Police*, 2009 U.S. Dist. LEXIS 71990 (S.D.N.Y. Aug. 14, 2009).

At the motion to dismiss stage, the assessment of whether a relationship is entitled to constitutional protection "is necessarily premised upon the description of the relationship in the operative pleadings." *Stalter v. Cty. of Orange*, No. 15-CV-5274, 2016 U.S. Dist. LEXIS 104237, at *8 (S.D.N.Y. Aug. 5, 2016). Thus, at this stage the Court must determine whether plaintiff has sufficiently alleged his relationships with Mr. Stone, Ms. Davis and unidentified members of the OATH Keepers, Proud Boys and "others" are the type of highly intimate relationship afforded constitutional protection.

With respect to his relationship with Mr. Stone, the SAC alleges that plaintiff provided deposition testimony to the Congressional Select Committee to Investigate the January 6th Attack on the U.S. Capitol and in that deposition testified that he and Mr. Stone are "friends and family since 2018." *See* SAC at ¶ 89. Plaintiff testified at his disciplinary trial that his friendship with Mr. Stone began in 2018 when he commented on Mr. Stone's Instagram post. *See* Ex. B at p. 14. Plaintiff further testified that he communicated with Mr. Stone over Instagram and met for the first time in 2018 at a restaurant in Manhattan. *Id.* At his disciplinary trial, plaintiff described his relationship with Mr. Stone as "very close friends." *Id.*

Thus, despite plaintiff claiming that he and Mr. Stone have a "familial" relationship, it is clear they are not, in fact, family. *See Berrios*, 518 F. Supp. 2d at 418 (familial relationships are typically between spouses, parents, siblings and children). To be sure, plaintiff has not alleged that relationship with Mr. Stone is based on the "creation and sustenance of a family" - given that marriage, childbirth, the raising and education of children, and cohabitation are not alleged to exist here. *See Roberts*, 468 U.S. at 619. Rather, they met via an Instagram post in 2018 and became friends.

Friendships, however close, are not afforded constitutional protection. *See Gallagher v. Bd. of Educ. of E. Hampton Union Free Sch. Dist.*, No. 16-CV-473, 2017 U.S. Dist. LEXIS 211264, at *7 (E.D.N.Y. Dec. 21, 2017) ("[T]he Constitution does not recognize a generalized right of social association, and courts in the Second Circuit have not accepted intimate association claims based on friendships, however close." (citation and quotation marks omitted)), *adopted by* 2018 U.S. Dist. LEXIS 21818 (E.D.N.Y. Feb. 9, 2018); *Silverstein*, 2011 U.S. Dist. LEXIS 34200, at *6 (rejecting an intimate association claim based on "a platonic friendship, even a long standing one of great intimacy"). The Second Circuit, in considering whether intimate association rights extend to relationships outside of the family, cautioned that such relationships must "share the characteristics that set family relationships apart - small, select, and secluded from others." *Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997). Here, the allegations regarding plaintiff's relationship with Mr. Stone demonstrate that, at best, they are close friends. This friendship, however, is not afforded constitutional protection.

With respect to plaintiff's alleged relationship with Ms. Davis, the allegations are even more sparse. In fact, with respect to Ms. Davis, plaintiff only repeats the boilerplate allegation that he has a "personal 'familial' and 'political' relationship" with Ms. Davis with no

other details whatsoever.  Thus, lacking specifics, plaintiff's relationship with Ms. Davis cannot be afforded constitutional protection.

Finally, as to plaintiff's allegations that he had a "personal 'familial' and 'political' relationship" with unidentified "members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again," it appears as though plaintiff is alleging that his association with these groups, rather than any individual within such groups, is entitled to constitutional protection under an intimate association theory. While courts have declined to strictly limit the right to intimate association to the family context, the Supreme Court has instructed that protected relationships must be "locate[d] . . . on a spectrum from the most intimate to the most attenuated of personal attachments." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987) (quotation marks omitted).  "In determining whether a particular association is sufficiently personal or private to warrant constitutional protection, we consider factors such as size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Id.*

The SAC contains no allegations regarding the size or selectively of the OATH Keepers, Proud Boys or "others who support Trump's America," nor does it contain any allegations as to whether others are excluded from "critical aspects of the relationship."  As for the purpose of these organizations, the SAC states that the OATH Keepers is an "*alleged* American far-right anti-government militia whose members claim to be defending the Constitution of the United States" and that the Proud Boys is an "*alleged* American far-right, neo-fascist, and exclusively male organization that promotes and engages in political violence in the United States." *See* SAC at ¶¶ 52, 54 (emphasis in the original).  Without more, the mere statement of the "alleged" purpose of these groups is insufficient to demonstrate that plaintiff's association with

10

them is sufficiently intimate in nature to warrant constitutional protection.  In fact, plaintiff does not even allege that he is a member of either of these groups or that he himself is a supporter of "Trump's America."  Thus, plaintiff, as a matter of law, cannot establish an intimate association claim based on these alleged affiliations.

Thus, plaintiff has failed to plead any protected "intimate relationship" that would give rise to a cognizable intimate association claim and therefore this claim should be dismissed as a matter of law.

## B.    Expressive Association

### 1.   No Protected Expressive Conduct Alleged

Plaintiff also appears to allege a violation of a right of expressive association under the First Amendment.  "Although freedom of expressive 'association is not explicitly set out in the Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition.'" *Piscottano v. Murphy*, 511 F.3d 247, 268 (2d Cir. 2007) (*quoting Healy v. James*, 408 U.S. 169, 181 (1972)).  The right to "associate for expressive purposes is not, however, absolute." *Roberts*, 468 U.S. at 623.  Indeed, because an expressive association claim is premised on the freedoms of speech, assembly, and petition, "the threshold question for a public employee's claim of freedom of expressive association is patterned after the threshold question for a free speech retaliation claim: whether the employee's expressive conduct is as a citizen on a matter of public concern." *McDonald v. Hempstead Union Free Sch. Dist.*, No. 18-CV-5658 (DRH)(SIL), 2019 U.S. Dist. LEXIS 108782, at *22-23 (E.D.N.Y. June 28, 2019) *citing Piscottano*, 511 F.3d at 268. Thus "a public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern." *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2003) (citations omitted).  The question of whether an

11

employee's expressive activity is speech on a matter of public concern is an issue of law for the court.  *See Connick v. Myers*, 461 U.S. 138, 150 n.10 (1983).

As with plaintiff's intimate association claim, his expressive association claim fails as a matter of law.  Plaintiff does not allege that he engaged in associational conduct of any sort.  Further, the SAC contains no allegations that plaintiff was associating with Mr. Stone, Ms. Davis and/or members of the OATH Keepers and Proud Boys ***for the purpose of*** engaging in First Amendment protected activity, namely speech, assembly, petition for the redress of grievances, and the exercise of religion.   In fact, the SAC does not detail any conduct or speech engaged in by plaintiff or these individuals and groups whatsoever, let alone expressive activity entitled to First Amendment protections.  This is an end to his expressive association claim as a matter of law.

**2.  Association with Mr. Stone**

But even looking at the sparse "activities" plaintiff identifies in his SAC, his claim still fails.  With respect to Mr. Stone, plaintiff alleges that: (1) his social media contains pictures of him and Mr. Stone; (2) he drove Mr. Stone to/from the airport on January 5 and 6, 2021; (3) he accompanied Mr. Stone to a barbershop on January 5, 2021; (4) he remained in a hotel room with him on January 6, 2021; and (5) Mr. Stone appeared at his disciplinary trial.  *See generally* SAC.  Plaintiff does not allege that any of these activities were for the purposes of engaging in First Amendment protected activity.  Rather, it is clear from plaintiff's repeated allegations that these interactions were in furtherance of the friendship between Mr. Stone and plaintiff.  To be sure, the SAC makes clear that plaintiff "knew nothing about whether [Mr.] Stone assisted President Donald J. Trump with the 2020 Presidential election."  SAC at ¶ 91.  Thus, by plaintiff's own allegations, these interactions were not in furtherance of any "political speech."  Further, none of these

interactions resulted in speech or activities regarding a matter of public concern.  Thus, these interactions cannot form the basis for a First Amendment claim.

### 3.  Association with Ms. Davis

For Ms. Davis, there are absolutely no allegations regarding plaintiff's associations with her beyond their exchange of text messages and that plaintiff drove her to/from the airport on January 5 and 6, 2021.  As with Mr. Stone, these interactions are of a social nature and because none of these interactions resulted in speech or activities regarding a matter of public concern, any association with Ms. Davis cannot form the basis for First Amendment claim.

### 4.  Association with Proud Boys, OATH Keepers and/or "Others"

As to plaintiff's allegations that he had a "political' relationship" with unidentified "members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again," these allegations do not give rise to a First Amendment claim as a matter of law.  Plaintiff does not allege that he was or is a member of the OATH Keepers and/or the Proud Boys or that he himself "supports Trump's America and the political paradigm of Making America Great Again."  Rather, he only alleges that the NYPD's investigation in connection with disciplinary charges preferred against him showed that his Instagram account contained pictures of himself with members of the OATH Keepers and Proud Boys and that he was present in a hotel room with members of OATH Keepers on January 5, 2021. *See* SAC at ¶ 55; 69.  Pictures on social media and being in the mere presence of members of an organization is not expressive activity that is afforded First Amendment protection because there is no allegation that they were undertaken ***for the purpose of*** engaging in First Amendment protected activity.  Indeed, nowhere in the SAC does plaintiff allege that he aligns himself with the OATH Keepers, the Proud Boys or unidentified "others" who "support Trump's America and the political paradigm of Making America Great Again."

13

### 5. No Public Concern

Even assuming that plaintiff had articulated the expressive conduct or speech, he has not demonstrated that such conduct or speech was of a matter of public concern. Indeed, plaintiff's friendship with Mr. Stone and Ms. David are certainly not of public concern. Similarly, the fact that the NYPD's investigation revealed that plaintiff's Instagram account contained pictures of himself with members of the OATH Keepers and Proud Boys and that he was present in a hotel room with members of OATH Keepers on January 5, 2021 is not of public concern. Given that this is the only expressive conduct even remotely articulated in the SAC, plaintiff's First Amendment claim fails.

### 6. *Pickering* Balancing Test

Finally, even further assuming that plaintiff had articulated the expressive conduct or speech at issue ***and*** that such conduct or speech was of a matter of public concern, his claim still fails given that when an employee's speech on a matter of public concern is sufficiently disruptive to government operations so that the disruption outweighs the value of the speech, a public employer may take an adverse employment action against the employee. *See Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *Blackman v. New York City Transit Authority*, 491 F.3d 95 (2d Cir. 2007).

Here, plaintiff claims that he was retaliated against for his association with Mr. Stone, Ms. Davis and unidentified members of the OATH Keepers, Proud Boys and "others" who support "Trump's America" by being investigated, brought up on disciplinary charges and ultimately terminated. The disciplinary charges relevant to plaintiff's First Amendment claims are premised upon two provisions of the NYPD Patrol Guide: (1) Section 203-10(2)(c), which prohibits a police officer from knowingly associating with any person or organization reasonably believed to be engaged in, likely to engage in, or to have engaged in criminal activities; and (2)

Section 203-10(2)(a), which prohibits a police officer from knowingly associating with any person or organization advocating hatred, oppression, or prejudice based on race, religion, gender, gender identity/expression, sexual orientation, or disability.  However, the disciplinary charge stemming from plaintiff's alleged association with the Proud Boys and OATH Keepers was unsubstantiated.

In *Pickering*, the Supreme Court established a test that balances "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir. 1999), *quoting Rankin v. McPherson*, 483 U.S. 378, 384 (1987); *see also Piscottano v. Murphy*, 511 F.3d 247, 269 (2d Cir. 2007)(*Pickering* balancing test safeguards the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees.").  Under *Pickering*, defendants bear the burden of demonstrating that "the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 115 (2d Cir. 2011), (*quoting Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008)).

Through this balancing test, the Court determines whether the employee's First Amendment protected conduct "'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships…or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Lewis*, 165 F.3d at 162, *quoting Rankin*, 483 U.S. at 388.  In conducting this balancing test, "[s]ubstantial weight is accorded the government employer's prediction that given speech has the potential for

disruptiveness" provided the prediction is "reasonable." *Heil v. Santoro*, 147 F.3d 103, 109 (2d Cir. 1998).

This case presents the classic formulation in which the *Pickering* balancing test weighs decidedly against conferring First Amendment protection to the so-called expressive conduct described by plaintiff in the SAC.  As held by the Second Circuit, public employers can take an adverse employment action against an employee "for speaking on a matter of public concern if: (1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech." *See Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir. 1995) (citing *Waters v. Churchill*, 511 U.S. 611, 673 (1994)). Even where no *actual* disruption has occurred, a government employer may act to prevent potential disruption if the employer believes it is likely to interfere with government operations. *Waters*, 511 U.S. at 672-74; *Jeffries*, 52 F.3d at 12.  Further, "[w]hen close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate," and there is no need "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Locurto v. Giuliani*, 447 F.3d 159, 182 (quoting *Connick v Myers*, 461 U.S. 138, 152 (1983) (internal quotations omitted)).

Here, defendants acted out of a reasonable concern that plaintiff's association with convicted felons and groups advocating hatred and/or the overthrow of the U.S. Government had the potential to disrupt the NYPD's mission "to enhance the quality of life in New York City by working in partnership with the community to enforce the law, preserve peace, protect the people, reduce fear, and maintain order."     *See* NYPD Mission Statement at

https://www.nyc.gov/site/nypd/about/about-nypd/mission.page (last accessed Apr. 17, 2023).  As indicated by ADC Gamble in the Report and Recommendation, since plaintiff knowingly associated with convicted felons and provided armed security for a convicted felon, these circumstances "strongly suggest[] that [plaintiff] will forever be compromised in the eyes of the public and his fellow police officers."  *Id.* at p. 25.  Further, ADC Gamble found that plaintiff's "lack of candor during his Department interviews and his trial testimony clarifies that he guided by his own moral compass rather than the provisions of the Patrol Guide."  *Id.* at p. 32.  Thus, ADC Gamble held that plaintiff's "continued presence as a Member of Service would be corrosive to the mission and values of this Department."  It was therefore reasonable for the NYPD to terminate plaintiff's employment based on his admitted and continued association with known convicted felons and his proven actions of providing armed security for a convicted felon.

While the disciplinary charge stemming from plaintiff's alleged association with the Proud Boys and OATH Keepers was ultimately unsubstantiated, the NYPD certainly had a reasonable belief that plaintiff's alleged association with these groups would impede its ability provide equal employment opportunity and would erode the public's trust that the NYPD will respect and protect its citizens' legal rights and, indeed, their very dignity.  *See e.g Pappas v. Giuliani*, 290 F.3d 143, 146—147 (2d Cir. 2002) (upholding police officer's termination for disseminating racist and anti-Semitic materials where NYPD had a reasonable concern the officer's actions would impair its ability to perform its mission, thus outweighing plaintiff's free speech interest), *cert. denied sub nom. Pappas v. Bloomberg*, 539 U.S. 958 (2003); *Locurto*, 447 F.3d at 178 (rejecting free speech claim by NYPD and FDNY employees terminated for participating in racist Labor Day parade float).

Therefore, under *Pickering*, the NYPD was reasonable in taking action against plaintiff for wrongfully and knowingly associating with an individuals who engaged in criminal activities given the disruption this association can cause.  Thus, Plaintiff's expressive association claim fails as a matter of law.[6]

**POINT II**

**AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A NEW YORK LABOR LAW CLAIM**

New York State Labor Law § 201-d prohibits discrimination based on an employee's "political activities" that occur outside of the employee's working hours.  N.Y. Labor Law § 201-d(2)(a).  "Political activities" under the statute is defined as (i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group.  *Id.* at (1)(a).  Although not specifically pleaded in the SAC, based on the totality of plaintiff's allegations, plaintiff appears to claim that his termination was in retaliation for his "'political'" relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again."  *See* SAC at ¶ 123.

---

[6] Plaintiff bizarrely argues that because the recording artist Cardi B performed Court-Ordered community service at a NYPD facility (to resolve her misdemeanor criminal charges), his First Amendment claim somehow has merit.  It seems as though plaintiff is engaging in so-called "whataboutism" by arguing that defendants themselves violated Patrol Guide § 203-10(2)(c) by permitting this community service to occur in the presence of NYPD officers.  However, this sensational accusation has no bearing on plaintiff's claims.  Permitting Court-Ordered community service to be performed in the presence of NYPD officers is completely dissimilar to actively seeking out and maintaining a voluntary friendship with a convicted felon and then performing armed security duties for the same felon.  Thus, plaintiff's allegations concerning Cardi B are entirely irrelevant to the instant analysis.

18

However, there are no allegations that plaintiff engaged in "political" activities outside his working hours that would receive protection under the statute. Thus, plaintiff's New York Labor Law claim must be dismissed as a matter of law.

## POINT III

### AS A MATTER OF LAW, PLAINTIFF CANNOT ESTABLISH A *MONELL* CLAIM

In order to maintain a § 1983 action against a municipality or an individual sued in his official capacity, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Bermudez v. City of New York*, No. 10 CV 1162 (CM), 783 F. Supp. 2d 560, 575 (S.D.N.Y. Mar. 25, 2011). To state a claim for municipal liability pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional rights." *Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) (citation and internal quotation marks omitted). In this case, for the reasons articulated above, plaintiff has failed to show that his First Amendment rights were violated and, therefore, the derivative *Monell* claim should be dismissed. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be *Monell* liability); *Martinez v. City of New York*, No. 06 CV 5671 (WHP), 2008 U.S. Dist. LEXIS 49023, at *12 (S.D.N.Y. June 27, 2008) ("[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), *aff'd sub nom, Martinez v. Muentes*, 340 F. App'x 700 (2d Cir. 2009).

Plaintiff's claim also fails to meet the initial requisite element because he has not plausibly pled a "policy, custom, or practice" that was causally connected to his injuries. *See Monell*, 436 U.S. 658. The SAC is entirely devoid of any factual allegations to support his §1983

19

claim.  Even if plaintiff had alleged such a violation, he does not plausibly allege that a municipal

policy or custom caused the violation of his constitutional rights.  The "mere assertion . . . that a

municipality has such a custom or policy is insufficient in the absence of allegations of fact tending

to support, at least circumstantially, such an inference." *Dwares v. City of N.Y.*, 985 F.2d 94, 100

(2d Cir. 1993), *overruled on other grounds* by *Leatherman v. Tarrant Co. Narcotics Intelligence

& Coordination Unit*, 507 U.S. 163, 164 (1993).

> Plaintiff has alleged neither a policy nor a practice.  Plaintiff does nothing more

than contend in a conclusory fashion the existence of practice of the NYPD utilizing the

"disciplinary process to discriminate against . . . disenfranchised members of the department

including [plaintiff] because of their race, gender, 'familial' and 'political' relationships."  SAC at

¶ 119.  Even assuming the veracity of that allegation for purposes of a motion to dismiss, plaintiff

has failed to specifically identify any policy that resulted in the alleged retaliation, which is

insufficient to impose liability under *Monell*.  *See Mitchell v. City of New York*, 841 F.3d 72, 80

(2d Cir. 2016) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (holding that a

single incident of unconstitutional activity is insufficient to alleged a *Monell* violation)).  Plaintiff's

failure to plead the existence of an "official, policy, or custom" is fatal to his claim, requiring

dismissal.

## POINT IV

## THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

> Under qualified immunity, "government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A violated right is "clearly

established" if "it would be clear to a reasonable officer [in the position of the defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (internal quotation marks omitted).

The SAC names Keechant L. Sewell, Ernest F. Hart, Daniel Cutter and Jeremy Orenstein individually as defendants. All of the individual defendants are entitled to qualified immunity under Section 1983. As shown above, the actions of defendants did not violate any constitutional right and cannot give rise to any liability. *See Liu v. New York City Police Dep't*, 216 A.D.2d 67, 68 (1st Dep't 1995)("A government official performing a discretionary function is entitled to qualified immunity providing his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Thus, qualified immunity shields the individual defendants and all constitutional claims must be dismissed as against them.

Even if plaintiff could establish some individual liability for these defendants, they would be entitled to qualified immunity. As detailed above, the constitutional claims plaintiff espouses are very narrow and the facts upon which he is supporting his theories are – charitably – a stretch. Even if some of the claims are viable, which they are decidedly not, qualified immunity would be appropriate. *See e.g. Lewis*, 165 F.3d at 166-67 ("relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech"), *cert. denied*, 528 U.S. 823 (1999); *Giacalone v. Abrams*, 850 F.2d

79, 85 (2d Cir. 1988) (saying "a public employee retains First Amendment rights" is . . . "too general to be controlling in the qualified immunity inquiry").

   Given the complex nuances of plaintiff's First Amendment claims, qualified immunity is plainly appropriate.  "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Sulehria v. City of N.Y.*, 670 F. Supp. 2d 288, 322 (S.D.N.Y. 2009), *quoting Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003).  Moreover, given that the NYPD followed proper protocols in investigating and charging plaintiff and that the findings against plaintiff were supported by evidence after a full adversarial hearing, it was objectively reasonable for the defendants herein to rely on those findings and believe they were acting lawfully and in accord with the evidence adduced through the appropriate processes.  Thus, all claims against defendants Sewell, Hart, Cutter and Orenstein individually must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court grant their

motion to dismiss the SAC, that the SAC be dismissed in its entirety and that defendants be granted

costs, fees, and disbursements together with such other and further relief as this Court deems just

and proper.

Dated:  New York, New York
    April 21, 2023

        **HON. SYLVIA O. HINDS-RADIX**
        Corporation Counsel of the
         City of New York
        Attorney for Defendants
        100 Church Street, Room 2-100
        New York, New York 10007-2601
        (212) 356-4015
        aoconnor@law.nyc.com

    By:    _____
         Andrea O'Connor
        Assistant Corporation Counsel