**EXHIBIT 1**

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM
NYSCEF DOC. NO. 66

INDEX NO. 153739/2018
RECEIVED NYSCEF: 04/30/2019

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   **HON. ALEXANDER M. TISCH**        PART    IAS MOTION 52EFM

*Justice*

------------------------------------------------------------X

R. C., A. G., and J. J., suing under pseudonyms, on behalf of themselves and all others similarly situated,

Plaintiffs,

- against -

THE CITY OF NEW YORK and JAMES P. O'NEILL, New York City Police Department Commissioner, in his Official capacity,

Defendants.

------------------------------------------------------------X

INDEX NO.          153739/2018

MOTION DATE     11/14/2018

MOTION SEQ. NO.          002

**DECISION AND ORDER**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 51

were read on this motion to/for          DISMISSAL          .

Plaintiffs R.C., A.G., and J.J. commenced the instant putative class action on behalf of themselves and others similarly situated against defendants the City of New York and James P. O'Neill challenging the New York City Police Department's (NYPD) policy and practice of maintaining, using, and disclosing sealed arrest records in violation of Criminal Procedure Law (CPL) Sections 160.50 and 160.55 (the sealing statutes) and due process rights under the New York State Constitution. Plaintiffs' complaint alleges, inter alia, that the NYPD maintains numerous databases containing information that is sealed under the statutes, but that such information is routinely accessed for investigative and various other purposes without court permission in violation of the statutes.

Defendants move pursuant to Civil Practice Laws and Rules (CPLR) 3211 (a) (7)[1] to dismiss the third cause of action alleging due process violations and all causes of action premised upon allegations concerning the NYPD's own internal use of the sealed information. Defendants do not challenge the

---

[1] Defendants also move pursuant to CPLR § 7804 (f), which is inapplicable here as this is not an Article 78 proceeding.

153739/2018  C. R. vs. CITY OF NEW YORK
Motion No. 002

Page 1 of 13

1 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM

NYSCEF DOC. NO. 66

INDEX NO. 153739/2018

RECEIVED NYSCEF: 04/30/2019

legal sufficiency of the claims to the extent that they are premised upon the allegations that the NYPD routinely and unlawfully discloses sealed information to media and other agencies.

CPL §160.50 provides, in relevant part, that when a criminal action is terminated in favor of the accused "the record of such action or proceeding shall be sealed."[2]

Section 160.50 (c) states "all official records and papers . . . relating to the arrest or prosecution . . . on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency." Subdivision (d) of the same section goes on to provide exceptions to sealing:

> (d) such records shall be made available to the person accused or to such person's designated agent, and shall be made available to:
>> (i) a prosecutor in any proceeding in which the accused has moved for an order pursuant to section 170.56 or 210.46 of this chapter, or
>> (ii) a law enforcement agency upon ex parte motion in any superior court, or in any district court, city court or the criminal court of the city of New York provided that such court sealed the record, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it, or
>> (iii) any state or local officer or agency with responsibility for the issuance of licenses to possess guns, when the accused has made application for such a license, or
>> (iv) the New York state department of corrections and community supervision when the accused is on parole supervision as a result of conditional release or a parole release granted by the New York state board of parole, and the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision, or
>> (v) any prospective employer of a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of this chapter, in relation to an application for employment as a police officer or peace officer; provided, however, that every person who is an applicant for the position of police officer or peace officer shall be furnished with a copy of all records obtained under this paragraph and afforded an opportunity to make an explanation thereto, or
>> (vi) the probation department responsible for supervision of the accused when the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision.

CPL § 160.60 states the intended effect of the sealing, to wit, that "the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status he

---

[2] This sealing mandate is also found in CPL § 160.55, which was subsequently enacted in 1980 to expand similar protections to noncriminal offenses. Any discussion to CPL § 160.50 equally applies to CPL § 160.55.

153739/2018  C., R. vs. CITY OF NEW YORK
Motion No. 002

Page 2 of 13

2 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM
NYSCEF DOC. NO. 66

INDEX NO. 153739/2018
RECEIVED NYSCEF: 04/30/2019

occupied before the arrest and prosecution." It goes on to provide that the arrest or prosecution "shall

not operate as a disqualification of any person so accused to pursue or engage in any lawful activity,

occupation, profession, or calling," and generally prohibits any inquiry into such arrest or prosecution

(CPL § 160.60).

### I.    Allegations Concerning NYPD's Internal Use of Sealed Information

In support of their motion, defendants argue that the policy, language, and judicial interpretation

of the foregoing statutory provisions of the sealing statutes permit the NYPD to use sealed arrest

information[3] within its possession for investigatory or other purposes.

It is well settled that "in the construction [of statutes], the intent . . . is to be sought first of all, in

the words and language employed" (McCluskey v Cromwell, 11 NY 593, 601 [1854]; see Palmer v Van

Santvoord, 153 NY 612, 615-16 [1897]). Indeed, "[t]he text of a statute is the 'clearest indicator' of . . .

legislative intent and 'courts should construe unambiguous language to give effect to its plain meaning'"

(Matter of Avella v City of New York, 29 NY3d 425, 434 [2017], quoting Matter of DaimlerChrysler

Corp. v Spitzer, 7 NY3d 653, 660 [2006]; see Matter of Alonzo M. v New York City Dept. of Probation,

72 NY2d 662, 665 [1988]). "[I]f the words are free from ambiguity and doubt, and express plainly,

clearly and distinctly, the sense of the framers of the instrument, there is no occasion to resort to other

means of interpretation" (McCluskey, 11 NY at 601; see id. at 602, quoting Newell v The People, 3

Selden, 97 [noting that if the plain words "embody a definite meaning, which involves no absurdity and

no contradiction between different parts of the same writing, then . . . there is no room for

construction"]).

As demonstrated infra, a reading of the plain language may very well end the inquiry; however,

the Court will address defendants' arguments on the statute's purpose, legislative history, and judicial

---

[3] The term "sealed arrest information" or "sealed arrest records" includes, for purposes of this decision, "all official records and papers relating to the arrest or prosecution" as referenced in subdivision (c) of CPL § 160.50 (1), as well as photographs and fingerprints, and the like as referenced in other subdivisions of that section.

153739/2018  C.. R. vs. CITY OF NEW YORK                                      Page 3 of 13
Motion No. 002

3 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM
NYSCEF DOC. NO. 66

INDEX NO. 153739/2018
RECEIVED NYSCEF: 04/30/2019

interpretation (see Matter of Sutka v Conners, 73 NY2d 395, 403 [1989] ["Legislative intent may be discerned from the face of a statute, but an apparent lack of ambiguity is rarely, if ever, conclusive"]). Accordingly, "inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (id.). A review of the plain language, together with the legislative intent, purpose, and judicial interpretation of the sealing statutes renders it abundantly clear that defendants' interpretation of the statute is without merit.

A. Plain Language

The statutes state that sealed arrest information that is "on file with . . . any . . . police agency . . . shall be sealed and not made available to any person or public or private agency" (CPL § 160.50 [1] [c]). The plain reading of the words infer that this pertains to sealed arrest information within a police agency's (i.e., the NYPD's) own possession (see Matter of Alonzo M., 72 NY2d 665-66 [analyzing the substantially similar sealing provisions of Family Court Act § 375.1 and finding that the "words and purport of [the statute] are plain"]).

Further, the statute expressly states what entities may access and use sealed arrest information, for what purpose, and how to gain such access (see CPL § 160.50 [1] [d]). Defendants do not contend that they are not considered a "law enforcement agency" within the specific exception enumerated in subdivision (ii) of CPL § 160.50 (1) (d). Therefore, to access and use sealed arrest information, the NYPD would have to move ex parte and demonstrate to the court "that justice requires that such records be made available to it" (CPL § 160.50 [1] [d] [ii]). In reading the subdivisions (c) and (d) together, the Court does not find any language by which it should be inferred, as defendants suggest, that the NYPD is permitted to use sealed arrest information maintained in its possession for investigatory purposes or otherwise (see Alonso M., 72 NY2d 665-66 ["Where a statute describes the particular situations in which it is to apply and no qualifying exception is added, 'an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded'"], quoting Patrolmen's

153739/2018 C., R. vs. CITY OF NEW YORK
Motion No. 002

Page 4 of 13

4 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM
NYSCEF DOC. NO. 66

INDEX NO. 153739/2018
RECEIVED NYSCEF: 04/30/2019

Benevolent Assn of City of N.Y. v City of New York, 41 NY2d 205, 208-09 [1976]). To be sure, the

Court of Appeals also found such language to be clear when it held that the New York City Department

of Probation violated a substantially similar sealing provision, Family Court Act § 375.1. The Court in

Alonzo M. specifically rejected the Probation Department's argument that the sealing provision required

a different interpretation because the sealed information was "acquired" from records and files

"maintained for itself," i.e., in its own possession (see Alonzo M., 72 NY2d at 664, 669). Such

exception is nowhere found in the statutory text; and to read the statute in the manner urged by

defendants would be inappropriately reading in words that are not there (see Palmer v Spaulding, 299

NY 368, 372 [1949] ["It is a strong thing so to read into a statute words which are not there and, in the

absence of a clear necessity, it is a wrong thing to do"]).

B. Legislative History & Purpose of the Sealing Statutes

In 1976, the New York State legislature passed a bill enacting Sections 160.50 and 160.60 into

the Criminal Procedure Law, and amended New York State Executive Law § 296, also known as the

New York State Human Rights Law (NYS HRL)[4] (see Roberts aff, exhibit 3 [NYSCEF Doc. No. 37],

Governor's Bill Jacket, L 1976, ch 877 [hereinafter Bill Jacket] at 10). The bill's explicit purpose states:

"This bill would eliminate the continued use of arrest and prosecution information by the courts, the

Division of Criminal Justice Services (DCJS), and other police agencies upon the termination of

criminal actions in favor of an accused individual" (Bill Jacket at 10). The Governor's Memorandum

goes on to provide that

> Despite the termination of criminal charges in a way favorable to the individual accused,
> the fact of the arrest and prosecution may haunt him for the rest of his life, damaging his
> reputation and hindering him in numerous ways. In providing for the return of
> fingerprints and photos, and the sealing of arrest records, and in prohibiting inquiry or
> adverse action in regard to a criminal action which was terminated in favor of the

---

[4] "[T]he Legislature made it an unlawful discriminatory practice under Executive Law § 296, except in specified cases, for any person or agency to inquire into or take adverse action in connection with the licensing, employment or providing of credit or insurance to an individual in regard to a favorably terminated criminal action" (People v Patterson, 78 NY2d 711, 715 [1991], citing Exec Law § 296 [16]).

153739/2018  C., R. vs. CITY OF NEW YORK
Motion No. 002

Page 5 of 13

5 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM
NYSCEF DOC. NO. 66

INDEX NO. 153739/2018
RECEIVED NYSCEF: 04/30/2019

accused, the bill would make the presumption of innocence more of a reality, and less of an abstract principle (Bill Jacket at 55).

Courts interpreting CPL § 160.50 have similarly described the purpose, stating that the "statute serves the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation" (Matter of Hynes v Karassik, 47 NY2d 659, 661-66 [1979]). "[T]he Legislature's objective in enacting CPL 160.50 and the related statutes concerning the rights of exonerated accuseds was to ensure that the protections provided be 'consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law'" (People v Patterson, 78 NY2d 711, 716 [1991], quoting Governor's Approval Mem, 1976 McKinney's Session Laws of NY, at 2451; see Alonzo M., 72 NY2d at 668 [noting the articulated rational for the sealing statutes is to ensure the "presumption of innocence"]; Patterson, 78 NY2d at 716 [noting that the "protection (i.e., the presumption of innocence)" extends "to such accused in the pursuit of employment, education, professional licensing and insurance opportunities"]). This explicit purpose is carried out "by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused" (Harper v Angiolillo, 89 NY2d 761, 766 [1997]; see Alonzo M., 72 NY2d at 668 [the sealing requirement was designed "to preclude access by those, especially in government and bureaucracy, who might otherwise prejudicially use rightfully protected information"]).

Defendants' first argument contends that the purpose of the statutes is to provide protections to the former accused by removing the stigma associated with the arrest and prosecution, ensuring that it "does not interfere with the arrest individual's *employment, education, professional licensing and insurance opportunities*" (NYSCEF Doc. No. 38 at 9-10 [emphasis added]). In support of this assertion, defendants cite cases and examples in the legislative history discussing the bill's extended protections provided under CPL § 160.60 and the NYS HRL as if that were the bill's sole purpose. In other words, defendants claim that the sealing statutes would only be violated if the context concerned interference

153739/2018 C., R. vs. CITY OF NEW YORK
Motion No. 002

Page 6 of 13

6 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM    INDEX NO. 153739/2018
NYSCEF DOC. NO. 66                                          RECEIVED NYSCEF: 04/30/2019

with an accused's employment, education, or provision of credit or insurance, etc. Such a strained

interpretation has no precedence in the courts (see, e.g., Alonzo M., 72 NY2d 662).

Additionally, "[p]rior or contemporaneous legislation on the same general subject may be

resorted to in aid of the interpretation, but not to control the clear language of subsequent statutes"

(Palmer v Van Santvoord, 153 NY at 615-16). Thus, simply because the other statutes reference this

context does not mean that a violation independent of those contexts may ever be present, and the Court

finds it inappropriate to read a clear statute in a way that limits its purpose (see McCluskey, 11 NY at

601-02 ["Statutes and contracts should be read and understood according to the natural and most

obvious import of the language, without resorting to subtle and forced construction for the purpose of

either limiting or extending their operation"]).

Notably, the Appellate Division, First Department explicitly acknowledged that a statutory

violation that was unrelated to, e.g., an employment related context, was a real injury that is

encompassed within the sealing statutes' designed protections (see Lino v City of New York, 101 AD3d

552, 555-56 [1st Dept 2012] [NYPD's alleged unlawful disclosure of "plaintiffs' records in the 'stop and

frisk' database . . . may lead to plaintiffs being targeted in future investigations," which is sufficient

harm to confer standing]).

C. Statutory Interpretation of CPL § 160.50(1)(c) — the Sealing Mandate

Defendants contend that the statutes permit internal access to and use of sealed records for

investigatory purposes, and merely prohibit disclosure to third parties outside of the NYPD. Defendants

also claim that their interpretation would permit them to use the sealed information internally for other

purposes such as officer discipline, and/or to "identify problems" and "improve service" within the

NYPD (NYSCEF Doc. No. 38 at 14-16). The Court finds that these contentions are without merit as the

statute does not permit such uses.

Case 1:22-cv-05109-FB-VMS   Document 32-1   Filed 06/08/23   Page 9 of 14 PageID #: 235

As noted above, the statute provides a blanket sealing of arrest information on cases that terminate in favor of the accused. It also provides specific exceptions to permit the unsealing of the same. Sealing is the general rule, and its exceptions are to be narrowly construed (Matter of Joseph M. (New York City Bd. of Educ.), 82 NY2d 128, 130 [1993] [describing the "plain intendment of the statutory scheme" as stating, "in unequivocal mandatory language, a *general proscription* against releasing sealed records and materials, subject only to a few narrow exceptions"] [emphasis in original]; Harper, 89 NY2d at 766 [the "ambit of the sealing requirement is broad," subject to "narrowly defined exceptions"]; see also Matter of New York State Commn. on Jud. Conduct v Rubenstein, 23 NY3d 570, 581 [2014]).

As noted above (*supra*, I [A]), the clear words of CPL § 160.50 (1) (c) provide for sealing of arrest information and state that such sealed information "shall not be made available to any person or public or private agency." Accordingly, the interpretations which defendants advance is nowhere found in the statute. The Court of Appeals agreed in Patterson, wherein it explicitly stated that there was "no authorization in that statute" for the police to use the sealed information at issue for investigatory purposes (78 NY2d at 714). The Court further held that the police's retention and use of the photograph was a violation of the statute (id.).

Furthermore, the idea that the sealed arrest information could be used internally for disciplinary purposes has also been explicitly rejected (see New York State Police v Charles Q, 192 AD2d 142, 143-46 [3d Dept 1993] [noting that, if being used for discipline and/or employment purposes, no exception to unseal information is available because the police department should be treated like any other public employer and is not acting as a "law enforcement agency"], citing Matter of Police Commr of City of N.Y., 131 Misc 2d 695, 698-99 [Sup Ct, NY County 1986]; Joseph M., 82 NY2d 128 [Board of Education could not move to unseal records for disciplinary proceeding against teacher]).

153739/2018  C., R. vs. CITY OF NEW YORK                   Page 8 of 13
Motion No. 002

8 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM

NYSCEF DOC. NO. 66

INDEX NO. 153739/2018

RECEIVED NYSCEF: 04/30/2019

Similarly, there is no support for the contention that the legislature intended that the NYPD could use its own sealed information internally, and that its sole limitation is a prohibition on disclosure to "third parties." The statute reads that the sealed arrest information "shall not be made available to any person or public or private agency"; however, it could have easily been written to state that the information shall not be made available "to third parties" or entities outside the agency which possess such information. Indeed, the courts have rejected the notion that the statute cannot be violated simply because the sealed information came from within the agency that was using it in an unlawful manner — whether internally for investigatory purposes (see Patterson, 78 NY2d at 714), or externally by disclosing the same to other entities (see Alonzo M., 72 NY2d 662).

D. Statutory Interpretation of CPL § 160.50 (1) (d) — Limited Exceptions to Unsealing

The exceptions in subdivision (d) of CPL § 160.50 (1) begin with the provision that the accused has a right to the sealed information, and provides a mechanism for unsealing under limited circumstances to six other entities (see CPL 160.50 [1] [d]). By doing so, the legislature acknowledged that the former defendant's right to be made whole to the status he occupied before the arrest and prosecution outweighs other considerations, including, e.g., law enforcement's automatic and unfettered access to the same. But because a former defendant's right is not absolute, the legislature saw the need for exceptions (see Harper, 89 NY2d at 766).

Because the statute contains a general proscription in favor of sealing and was designed "to preclude access by those, especially in government and bureaucracy, who might otherwise prejudicially use rightfully protected information," the exceptions specifically set forth to whom and why access should be given (see Alonzo M., 72 NY2d at 668). "These six statutory exceptions are precisely drawn [and] underscores the Legislature's commitment to prohibiting disclosure of sealed records . . . except where the statute explicitly provides otherwise" (Katherine B. v Cataldo, 5 NY3d 196, 203 [2005]).

153739/2018  C.. R. vs. CITY OF NEW YORK
Motion No. 002

Page 9 of 13

9 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM

NYSCEF DOC. NO. 66

INDEX NO. 153739/2018

RECEIVED NYSCEF: 04/30/2019

By providing those exceptions, the legislature balanced the accused's rights and countervailing considerations, such as those raised by the defendants, and implicitly rejected the idea that a law enforcement agency like the NYPD could use sealed information the way defendants claim is permissible (see generally Harper, 89 NY2d at 766-67). Notably, the exceptions under subdivisions (iv), (v), and (vi) provide for automatic exemption without the necessity of making a motion because their proponents successfully argued against having to make a time-consuming motion (see Katherine B., 5 NY3d at 204). Here, it is likely that the legislature saw fit for a court to determine if a law enforcement agency sufficiently demonstrated that "justice requires that such records be made available to it" (CPL 160.50 [1] [d] [ii]), as opposed to providing automatic access. Indeed, other investigatory tools by law enforcement, such as "applications for eavesdropping or video surveillance warrants," are also obtained by ex parte application to the court (see Katherine B., 5 NY3d at 205).

There is no doubt that the NYPD is subject to the unsealing exception and method set forth in CPL 160.50 (1) (d) (ii). Notably, defendants do not dispute that they are considered a "law enforcement agency" as set forth in the statute (see id. at 204 ["The term 'law enforcement agency' . . . includes law enforcement entities *in addition to* police departments and the Division of Criminal Justice Services"] [emphasis added]).

Tellingly, the NYPD's own statement, as quoted in a letter by Mayor Beame to the Governor recommending disapproval of the bill in 1976, stated as follows: "The provision that the records would be made available to a law enforcement agency upon motion, is impractical and unwise. Speedy investigations produce the best results and requiring police officers to get court orders to look at records may hinder the investigations" (Bill Jacket at 31). Clearly, the statement contention demonstrates that the procedure in CPL 160.50 (1) (d) applies to the NYPD as a law enforcement agency and that, if it were seeking sealed information for an investigation, it would have to make an application to the court.

153739/2018  C., R. vs. CITY OF NEW YORK                Page 10 of 13
Motion No. 002

10 of 13

Case 1:22-cv-05109-FB-VMS   Document 32-1   Filed 06/08/23   Page 12 of 14 PageID #: 238

In response to this acknowledgment that the NYPD would need a court order to legally engage in the alleged practices, defendants claim that "the NYPD's statement is properly understood to address a police department's access to sealed records maintained by other jurisdictions or entities" (NYSCEF Doc. No. 38 at 12). Defendants provide no basis for that statement.

Accordingly, that branch of defendants' motion to dismiss the claims to the extent they rely upon allegations concerning the NYPD's own use of sealed arrest information is denied, as the complaint sufficiently alleges a statutory violation in this regard.

## II.    Due Process Claim

Defendants contend that the Court of Appeals decision in Patterson necessarily bars plaintiffs' due process claim.

In Patterson, the police used a photograph unlawfully retained in violation of CPL § 160.50 and subsequently used that photograph in array in an unrelated matter against the same defendant (see Patterson, 78 NY2d 711). The issue before the Court of Appeals was whether a statutory violation of CPL § 160.50 implicated a "constitutional right of the defendant sufficient to warrant invocation of the exclusionary rule," and the Court found that it did not (id. at 714; see id. at 718 [a "technical violation" of the statute "does not warrant suppression of the identification testimony"]). The majority's review of the "legislative history of CPL § 160.50 and related statutes enacted at the same time" lead to the conclusion that a remedy for the statutory violation was "unrelated to any Fourth or Fifth Amendment protections" (id. at 714).

Although, the Patterson court acknowledged a prior ruling "that an individual's right to due process is violated by improper access to records sealed pursuant to CPL 160.50" (id. at 717, citing Matter of Dondi, 63 NY2d 331, 339 [1984]), cases since Patterson have held that it stands for the proposition that a violation of CPL § 160.50 simply does not implicate any constitutional rights, including a constitutional right to due process (see Matter of Charles Q. v Constantine, 85 NY2d 571,

153739/2018  C., R. vs. CITY OF NEW YORK                                    Page 11 of 13
Motion No. 002

11 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM
NYSCEF DOC. NO. 66

INDEX NO. 153739/2018
RECEIVED NYSCEF: 04/30/2019

575 [1995]; United States v Jakobetz, 955 F2d 786, 802 [2d Cir 1992]; Grandal v City of New York, 966 F Supp 197, 200-02 [SDNY 1997]; D.S. v City of Peekskill, 12 CV 4401 [KMK], 2014 WL 774671 [SDNY Feb. 27, 2014], affd on other grounds 581 Fed Appx 65 [2d Cir 2014]).

One of those cases is D.S. v City of Peekskill. The plaintiff in D.S. similarly argued that Patterson concerned only whether constitutional rights were implicated under the Fourth or Fifth Amendments (2014 WL 774671). The D.S. court held that the Patterson holding necessarily limited any putative due process claim under the Fourteenth Amendment because, in acknowledging that the statutory violation is unrelated to the Fifth Amendment protections, procedural due process is necessarily encompassed within that and therefore, presumably, not implicated (see id. at *4, *6, citing Patterson, 78 NY2d at 714-15).[5]

Aside from Patterson itself, courts have also examined Anderson v City of New York, which found that CPL § 160.50 created a protectable interest in reputation and privacy (611 F Supp 481 [SDNY 1985]). Many courts declined to follow Anderson's reasoning on that finding because the standard in identifying a liberty interest had changed (see D.S., 2014 WL 774671, at *5-6 [discussing the U.S. Supreme Court's departure on identifying a liberty interest by focusing on the state law's mandatory language]; see also Grandal, 966 F Supp 197 at 202 [same]). Further, the mere "fact that a state has established procedures to be followed does not mean that it has created a protectable liberty interest" (Rodriguez v McLoughlin, 214 F3d 328, 339 [2d Cir 2000]). Thus, for the reasons above, the Court does not find that one should be implicated here.

---

[5] The Second Circuit Court of Appeals in D.S. affirmed the decision on different grounds; namely, that the plaintiff failed to plead the requisite intent to support a claim alleging a violation of due process. The appellate court declined to "decide whether Section 160.50 creates a liberty interest protected by the Due Process Clause (581 Fed Appx at 67, n 1).

153739/2018 C. R. vs. CITY OF NEW YORK
Motion No. 002

Page 12 of 13

FILED: NEW YORK COUNTY CLERK 04/30/2019 11:34 AM

NYSCEF DOC. NO. 66

INDEX NO. 153739/2018

RECEIVED NYSCEF: 04/30/2019

Accordingly, it is hereby

ORDERED that the motion is granted solely to the extent that the plaintiffs' third cause of action is dismissed; and it is further

ORDERED that the motion is otherwise denied; and it is further

ORDERED that the parties are directed to appear for preliminary conference in DCM, Room 103 of 80 Centre Street on May 22, 2019 at 2:00 PM.

This constitutes the decision and order of the Court.

HON. ALEXANDER M. TISCH

| 4/29/2019 | | ALEXANDER M. TISCH, J.S.C. |
| --- | --- | --- |
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

153739/2018  C., R. vs. CITY OF NEW YORK
Motion No. 002

Page 13 of 13

13 of 13