UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

SALVATORE J. GRECO

Plaintiff,

-against-                                                    22 cv 5109

THE CITY OF NEW YORK; KEECHANT L. SEWELL, as
Police Commissioner, Police Department City of New York;
ERNEST F. HART, as Deputy Commissioner Legal Matters,
Police Department City of New York; DANIEL S. CUTTER,
as Commanding Officer, Internal Affairs Bureau Group No.: 25
and JEREMY D. ORENSTEIN, as Sergeant, Internal Affairs
Bureau Group No.: 25, each sued individually and in their official
capacities as employees of The City of New York

Defendants'

---------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' THE CITY OF NEW YORK; KEECHANT L. SEWELL;
ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN'S
MOTION TO DISMISS**

Eric Sanders, Esq.
THE SANDERS FIRM, P.C.
30 Wall Street, 8th Floor
New York, NY 10005
(212) 652-2782 (Business Telephone)
(212) 652-2783 (Facsimile)

Website: http://www.thesandersfirmpc.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...............................................................................................iv

BACKGROUND OF THE ACTION ............................................................................. 1-7

    Arrest Record Data in the So-Called Land of the 'Free' ...................................... 1-2

    NYPD 'Political' Abuse of its' Statutory Authority.................................................2

    The Allegations of Criminal Association and Subversive Activities .................. 2-4

    The Select Committee to Investigate the January 6th Attack on the United States
    Capitol..................................................................................................................... 4-5

    The Department's Criminal Association with Belcalis Marlenis Almánzar Cephus
    Professionally Known As Cardi B...................................................................... 5-7

COUNTERARGUMENTS

    POINT I
    THE ADOPTED FINDINGS OF THE DEPUTY COMMISSIONER TRIALS
    DOES NOT PRECLUDE PLAINTIFF'S LEGAL CLAIMS ........................... 7-10

    POINT II
    THE STATED COMPARATOR ALLEGATIONS REGARDING THE
    DEPARTMENT'S CRIMINAL ASSOCIATION WITH CARDI B SUPPORTS
    THE PROPOSITION DEFENDANTS' "ARBITRARY" APPLICATION OF
    THE DISCIPLINARY RULES .........................................................................10

    POINT III
    PLAINTIFF STATES A CLAIM FOR FREEDOM OF SPEECH RIGHT TO
    INTIMATE ASSOCIATION ........................................................................ 11-14

    POINT IV
    PLAINTIFF STATES A CLAIM FOR FREEDOM OF SPEECH RIGHT TO
    POLITICAL ASSOCIATION ....................................................................... 14-15

    POINT V
    PLAINTIFF STATES A CLAIM FOR MONELL ......................................... 16-18

    POINT VI
    PLAINTIFF STATES A CLAIM FOR POLITICAL ACTIVITIES .............. 18-19

POINT VII
DEFENDANTS ARE NOT ENTITLED TO DEFENSE OF QUALIFIED
IMMUNITY ..................................................................................................... 19-21

CONCLUSION.................................................................................................................22

## TABLE OF AUTHORITIES

**Federal Cases**

*Abdulgalil Alwan v. City of New York,*
   311 F. Supp. 3d 570 (E.D.N.Y. May 1, 2018) ..................................................... 16

*Adler v. Pataki,*
   185 F.3d 35 (2d Cir. 1999) ............................................................................... 9

*Amnesty Am. v. Town of W. Hartford,*
   361 F.3d 113 (2d Cir. 2004) ............................................................................ 16

*Anderson v. Creighton,*
   483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ...............................20

*Ashcroft v. Al-Kidd,*
   563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) .................................. 20

*Blum v. Schlegel,*
   18 F.3d 1005 (2d Cir. 1994) ............................................................................. 9

*Burkybile v. Bd. of Educ.,*
   411 F.3d 306 (2d Cir. 2005) .......................................................................... 8, 9

*Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of N.Y.,*
   502 F.3d 136 (2d Cir. 2007) ............................................................................ 11

*Citibank, N.A. v. K-H Corp.,*
   968 F.2d 1489, 1494 (2d Cir. 1992)..................................................................20

*City of Canton Ohio v. Harris,*
   489 U.S. 378 (1989) .................................................................................. 16, 17

*Colon v. Coughlin,*
   58 F.3d 865 (2d Cir. 1995) .............................................................................. 8

*Connell v. Signoracci,*
   153 F.3d 74 (2d Cir. 1998) ............................................................................. 19

*Dembitsky v Maruca,*
   1993 US Dist LEXIS 10399 (WDNY July 27, 1993, 91-CV-0503E(F) .......................... 14-15

*Graham v. Long Island R.R.*
   230 F.3d 34 (2d Cir. 2000) ............................................................................. 10

*H.H. v. City of New York,*
　　2017 U.S. Dist. LEXIS 124317 (E.D.N.Y. Aug. 7, 2017) ...................................................... 17

*Jackler v. Byrne,*
　　658 F.3d 225, 242 (2d Cir. 2011) .............................................................................................20

*Jenkins v. City of New York,*
　　2019 U.S. Dist. LEXIS 94364 (E.D.N.Y. Jun. 5, 2019) ......................................................... 16

*Locurto v. Giuliani,*
　　447 F.3d 159 (2d Cir. 2006) ................................................................................................. 7, 8

*Matusick v Erie County Water Auth.,*
　　757 F3d 31 [2d Cir 2014] .................................................................................... 8, 9, 11, 12, 13

*McGowan v. United States,*
　　825 F.3d 118 (2d Cir. 2016) ................................................................................................... 20

*McKenna v. Wright,*
　　386 F.3d 432 (2d Cir. 2004) .............................................................................................. 20, 21

*Mt. Healthy City Board of Ed. V. Doyle,*
　　429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977) .....................................................15

*Mitchell v. Forsyth,*
　　472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985) .......................................19

*Pickering v. Board of Education*
　　391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) .......................................................... 13

*Reynolds v. Giuliani,*
　　506 F.3d 183 (2d Cir. 2007) ................................................................................................... 16

*Roberts v. United States Jaycees*
　　468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984) .................................................. 11, 12

*Schoolcraft v City of NY,*
　　955 F Supp 2d 192 [SDNY 2013] ....................................................................................... 7, 8

*Senno v. Elmsford Union Free Sch. Dist.,*
　　812 F. Supp. 2d 454 (S.D.N.Y. 2011) ...................................................................................... 9

*Shabbir v. Pak. Int'l Airlines,*
　　2008 U.S. Dist. LEXIS 27957, 2008 WL 938427 (E.D.N.Y. Apr. 7, 2008) .......................... 19

*Shahar v. Bowers*,
   114 F.3d 1097 (11th Cir. 1997) .................................................................... 13

*Soderbeck v. Burnett County, Wis.*,
   752 F.2d 285, 288 (7th Cir.), *cert. denied,* 471 U.S. 1117, 86 L. Ed. 2d 261, 105 S. Ct. 2360
   (1985) ......................................................................................................14

*Torres v LaLota*,
   2017 US Dist LEXIS 129971 [EDNY Aug. 14, 2017, No. CV 15-7097 (JMA)(AYS)] ....... 19

*Vann v. City of New York*,
   72 F.3d 1040 (2d Cir. 1995) ....................................................................... 16

*Univ. of Tennessee v. Elliott*,
   478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) ...................................7

*Vincent v. Yelich*,
   718 F.3d 157 (2d Cir. 2013) ....................................................................... 20

*Washington v. Gonyea*,
   538 F. App'x 23 (2d Cir. 2013) .................................................................. 21

*Zablocki v. Redhail*,
   434 U.S. 374, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978) ........................................ 14

**State Cases**

*Alonzo M.*,
   72 NY2d 662 .............................................................................................. 3

*Jeffreys v. Griffin*,
   1 N.Y.3d 34, 801 N.E.2d 404, 769 N.Y.S.2d 184 (N.Y. 2003) ............................... 8

*Joseph M.*,
   82 NY2d 128 .............................................................................................. 3

*Matter of Police Commr of City of N.Y.*,
   131 Misc 2d 695, 698 – 699 ........................................................................3

*New York State Police v Charles Q*,
   192 AD2d 142–46 [3d Dept 1993] ................................................................. 3

*People v. Patterson*,
   78 NY2d 711 (1991) .................................................................................... 3

**State Statutes**

C.P.L. § 160.50 ..................................................................................................................... 2-3

Labor Law § 201-d ................................................................................................... 1, 2, 4, 17, 18

## BACKGROUND

We represent the plaintiff in the above referenced matter. These legal matters relate to Plaintiff alleging that Defendants' THE CITY OF NEW YORK; KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN collectively investigated and terminated him due to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again in violation of the First Amendment – Freedom of Right to Intimate Association, Political Affiliation and New York Labor Law § 201-d (2)(a) Outside Political Activities due to their blatant "arbitrary" content moderation and affiliation discrimination preferences. Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL terminated him due to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great Again' in violation of the First Amendment – Freedom of Speech Right to Intimate Association, Political Affiliation and New York Labor Law § 201-d (2)(a) Outside Political Activities due to their blatant "arbitrary" content moderation and affiliation discrimination preferences. § 109.

### Arrest Record Data in the So-Called Land of the 'Free'

Plaintiff alleges that according to the Brennan Center for Justice, more than seventy (70) million adults in the United States have a criminal record. ¶ 11. Plaintiff alleges that regardless of a former arrestee's legal status, these individuals struggle to participate in our society due to value judgments and other social stigmas. ¶ 12. Plaintiff alleges that after years of stagnation, various policy initiatives have attempted to manage the construction of criminal record stigma to reduce

reintegration barriers, and subsequent recidivism, driven by 'labeling.' ¶ 13. Plaintiff alleges that in

April of 2016, the Department of Justice (DOJ) adopted a policy that changes the language used to

describe individuals with criminal records, substituting person-first terms (e.g., "person with a

felony") for crime-first terms (e.g., "felon" or "offender"). ¶ 14. Plaintiff alleges that the Equal

Employment Opportunity Commission (EEOC) has issued guidelines to structure how decision-

makers use criminal records. ¶ 15. Plaintiff alleges that for years, various social institutions such as

family, government, religion, education, and media shape the alleged roles, norms, and

expectations, which functions to meet the social needs of society. Thus, such social institutions play

a significant role in dehumanizing former arrestees from integrating back into society. ¶15.

### NYPD 'Political' Abuse of its' Statutory Authority

Defendant KEECHANT L. SEWELL, is the Police Commissioner, Police Department

City of New York and authorized agent acting on behalf of Defendant THE CITY OF NEW

YORK. ¶ 17. Defendant THE CITY OF NEW YORK designates the Police Department City of

New York (NYPD) as a mayoral agency to engage in law enforcement activities with the general

public and to manage its employees including handling disciplinary matters. ¶ 18 – 38. Plaintiff

alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL'S

operation of Legal Matters, Internal Affairs, Office of the Department Advocate and Trials are in

contravention of the First Amendment – Freedom of Right to Intimate Association, First

Amendment – Freedom of Speech. ¶¶ 35 – 38, and New York Labor Law § 201-d (2)(a) Outside

Political Activities due to their blatant "arbitrary" content moderation and affiliation

discrimination preferences.

### The Allegations of Criminal Association and Subversive Activities[1]

---

[1] It's important to note, throughout the internal investigation including the department trial, the NYPD specifically
accessed, used, and presented the sealed criminal records of Kristin M. Davis and others in violation of C.P.L. §

Plaintiff alleges that on or about January 22, 2021, the Internal Affairs Bureau Command Center received an anonymous letter as follows: To whom it may concern – I am writing to the NYPD Internal Affairs Bureau about the D.C. take-ver. PO Salvatore Greco CTTF, and PO Gregory Nealon 60 pct., attended the riot at Capitol Hill. These officers want to have a civil war in America. ¶ 39. Throughout the internal investigation, there was no evidence of criminal or subversive activities to overthrow the United States government. ¶¶ 39 – 70. However, there is evidence that plaintiff 'associated' with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again. ¶¶ 40, 43, 49 – 55. Plaintiff alleges that Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL terminated him due to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of

---

160.50 (1)(c), a previous Court of Appeals ruling and recently the Decision and Order in R.C., A.G. and J.J., et al. v. The City of New York, et al., in the Supreme Court of the County of New York Index No.: 153739/2018, Honorable Alexander M. Tisch, where the court noted: the Court of Appeals agreed in People v. Patterson, 78 NY2d 711, 714 (1991), there was "no authorization in that statute" for the police to use the sealed information at issue for investigatory purposes. The Court further held that the police retention and use of the photograph was a violation of the statute.

Furthermore, the idea that the sealed arrest information could be used internally for disciplinary purposes has also been explicitly rejected (see New York State Police v Charles Q, 192 AD2d 142, 143 – 46 [3d Dept 1993] [noting that, if being used for discipline and/or employment purposes, no exception to unseal information is available because the police department should be treated like any other public employer and is not acting as a "law enforcement agency"], citing Matter of Police Commr of City of N.Y., 131 Misc 2d 695, 698 – 699 [Sup Ct, NY County 1986]; Joseph M., 82 NY2d 128 [Board of Education could not move to unseal records for disciplinary proceeding against teacher]).

Similarly, there is no support for the contention that the legislature intended that the NYPD could use its own sealed information internally, and that its sole limitation is a prohibition on disclosure to "third parties." The statute reads that the sealed arrest information "shall not be made available to any person or public or private agency"; however, it could have easily been written to state that the information shall not be made available "to third parties" or entities outside the agency which possess such information. Indeed, the courts have rejected the notion that the statute cannot be violated simply because the sealed information came from within the agency that was using it in an unlawful manner — whether internally for investigatory purposes (see Patterson, 78 NY2d at 714), or externally by disclosing the same to other entities (see Alonzo M., 72 NY2d 662). (Exhibit No.: 1)

the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great Again' in violation of the First Amendment – Freedom of Right to Intimate Association and First Amendment – Freedom of Speech. ¶¶ 71 – 80, and New York Labor Law § 201-d (2)(a) Outside Political Activities due to their blatant "arbitrary" content moderation and affiliation discrimination preferences.

**The Select Committee to Investigate the January 6ᵗʰ Attack on the United States Capitol**

Plaintiff alleges that on or about April 20, 2022, the Committee drafted an "abusive" subpoena to unlawfully review his cellular telephone records. § 81. Plaintiff alleges that shortly thereafter, the Committee using the United States Marshal Service, served the "abusive" subpoena upon Verizon Security Subpoena Compliance located in Bedminster, NJ. § 82. Plaintiff alleges that on or about April 25, 2022, Verizon Security Subpoena Compliance notified him about the "abusive" subpoena, although he was "alarmed" he knew it was nothing more than a "fishing expedition" related to his personal 'familial' and 'political' relationships with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great Again' in violation of the First Amendment – Freedom of Speech Right to Intimate Association, Political Affiliation and New York Labor Law § 201-d (2)(a) Outside Political Activities. § 83. Plaintiff alleges that he knew he violated no laws nor did he participate in the so-called January 6th Attack on the United States Capitol. § 84.

Plaintiff alleges that on or about May 16, 2022, shortly after the conclusion of the department trial, he was compelled to provide deposition testimony to the Committee. § 86. Plaintiff alleges that interestingly, the Committee focused upon any alleged text messages between he, Roger Jason Stone, Jr., Kristin M. Davis, their associations with each other and

connections to Infowars Alex Jones and other related political connections. § 87. Plaintiff alleges

that he testified, he did not nothing wrong, nor did he ever work for Roger Jason Stone, Jr. § 88.

Plaintiff alleges that he testified, he and Roger Jason Stone, Jr. are friends and family since 2018.

§ 89. Plaintiff alleges that he testified, he knew nothing about whether Roger Jason Stone, Jr.,

assisted President Donald J. Trump with the 2020 Presidential election. § 91. Plaintiff alleges

that he testified, he did not provide security to Roger Jason Stone, Jr. § 92.

Plaintiff alleges that on or about December 22, 2022, the Committee issued its Final

Report, House Report No.: 117-663. § 93. Plaintiff alleges that the Committee recommended no

congressional action against him nor did the Department of Justice recommend legal action

against him. § 94.

### The Department's Criminal Association with Belcalis Marlenis Almánzar Cephus Professionally Known As Cardi B

Plaintiff alleges that the department's association with Cardi B is direct evidence that

Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL engages in blatant

content moderation and affiliation discrimination in violation of the First Amendment as they

"arbitrarily" decide what content and affiliations violate NYPD Patrol Guide Procedure No.:

203-10, Page 1, Paragraph 2(a) PUBLIC CONTACT – PROHIBITED CONDUCT GENERAL

REGULATIONS: wrongfully and knowingly associated with any person or organization

advocating hatred, oppression, or prejudice based on race, religion, gender, gender

identity/expression, sexual orientation, or disability. § 95. Plaintiff alleges that the department's

association with Cardi B is direct evidence that Defendants' THE CITY OF NEW YORK and

KEECHANT L. SEWELL engages in blatant content moderation and affiliation discrimination

in violation of the First Amendment as they "arbitrarily" decide what content and affiliations

violate NYPD Patrol Guide Procedure No.: 203-10, Page 1, Paragraph 2(c) PUBLIC CONTACT

– PROHIBITED CONDUCT GENERAL REGULATIONS: wrongfully and knowingly associated with a person, reasonably believed to be engaged in, likely to engage in or to have engaged in criminal activities. § 96, 97 – 104.

Plaintiff alleges that on or about February 27, 2023, Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL authorized Cardi B to enter a secured department facility, the NYPD Police Academy to appear for the NYPD "Girl Talk" a mentorship program for young girls needing someone to lean on as they navigate peer pressure and other challenges facing city teens. § 105, noting her admitted criminal activities and gang affiliations 106 – 107. Plaintiff alleges that following the logic and recommendation of Assistant Deputy Commissioner Paul M. Gamble and adopted by Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL, she must be terminated by Mayor Eric L. Adams as was [Plaintiff SALVATORE GRECO], along with the other employees who associated with Cardi B. § 107. Plaintiff alleges that the failure to do so further supports Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL blatantly engages in content moderation and affiliation discrimination in violation of the First Amendment by "arbitrarily" deciding what content and affiliations violate NYPD Patrol Guide Procedure No.: 203-10, Page 1, Paragraph 2(a) PUBLIC CONTACT – PROHIBITED CONDUCT GENERAL REGULATIONS: wrongfully and knowingly associated with any person or organization advocating hatred, oppression, or prejudice based on race, religion, gender, gender identity/expression, sexual orientation, or disability and NYPD Patrol Guide Procedure No.: 203-10, Page 1, Paragraph 2(c) PUBLIC CONTACT – PROHIBITED CONDUCT GENERAL REGULATIONS: wrongfully and knowingly associated

with a person, reasonably believed to be engaged in, likely to engage in or to have engaged in criminal activities. § 108.[2]

## COUNTERARGUMENTS

POINT I
THE ADOPTED FINDINGS OF THE DEPUTY COMMISSIONER TRIALS DOES NOT PRECLUDE PLAINTIFF'S LEGAL CLAIMS

"[T]he Supreme Court has held that, as a matter of federal common law issue preclusion, "when a state agency acting in a judicial capacity . . . resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."" Schoolcraft v City of NY, 955 F Supp 2d 192 [SDNY 2013]); *see* Locurto v. Giuliani, 447 F.3d 159, 170 (2d Cir. 2006) (quoting Univ. of Tennessee v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986)). In addition, under New York law, "collateral estoppel, or issue preclusion, gives conclusive effect to an administrative agency's quasi-judicial

---

[2] In the City's motion, it attempts to mislead the Court suggesting that Cardi B was at the NYPD Police Academy due to a Court Order which is absolutely "False." On or about March 10, 2023, Mayor Eric L. Adams in a public release affirmed that the former Chief of Training Juanita Holmes invited Cardi B as a result of her teen advocacy. (Exhibit No.: 2)

The only disappointing aspect of you having Cardi B is that I wasn't invited. You don't discard people. This is an administration that believed perfectly imperfect people can show from their lessons to help people as they move forward in life. (Well, if true, why doesn't that same standard apply to plaintiff's affiliations with Roger Jason Stone, Jr., and Kristin M. Davis?)

Also, it's important to note, on or about March 9, 2023, according to the New York Daily News, Holmes irked Sewell with her invite to Cardi B to a "Girl's Talk" event at the NYPD Police Academy on February 24, 2023, where the hip hop star talked and danced with young girls *allegedly* as part of her court-ordered community service for her role in a Queens strip club assault case in 2018.

The invite, made *allegedly* without Sewell's knowledge, forced academy supervisors to scramble by shuffling 400 recruits to different classrooms for an important academic test that was to be held in the auditorium where Cardi B appeared. Sources said Sewell fumed over the incident in the belief it showed Holmes wasn't focused on her job's core mission and gave the impression the NYPD had no issue with the rapper's bawdy lyrics, rough-around-the-edges persona, and her run-ins with the law. (Exhibit No.: 3)

determination when two basic conditions are met: (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency in a prior proceeding; and (2) there was a full and fair opportunity to contest this issue in the administrative tribunal." Schoolcraft, 955 F.Supp 2d 193. s*ee* Jeffreys v. Griffin, 1 N.Y.3d 34, 39, 801 N.E.2d 404, 769 N.Y.S.2d 184 (N.Y. 2003); see also Burkybile v. Bd. of Educ., 411 F.3d 306, 310 (2d Cir. 2005) ("New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate").

Although there have been instances where a particular governmental entity's administrative procedure has been deemed to have too much "procedural laxity" for collateral estoppel to apply, Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995), the Second Circuit has tacitly recognized that no such issue exists with respect to NYPD administrative disciplinary hearings, such as the one that [p]laintiff face[d]. Schoolcraft, 955 F.Supp 2d 194. *See* Locurto, 447 F.3d at 170-72 (recognizing that NYPD disciplinary hearings can have preclusive effect, but ultimately holding that collateral estoppel did not apply due to issues specific to the administrative proceedings in that case). In this case, Defendants' THE CITY OF NEW YORK and KEECHANT L. SEWELL adopted the Deputy Commissioner Trials recommendation to terminate plaintiff for violating department rules. And, therefore, that recommendation became the official decision of the NYPD.

Although a First Amendment retaliation claim under Section 1983 is not evaluated using the McDonnell Douglas burden-shifting methodology, it too involves consideration of whether the plaintiff experienced an adverse action related to his or her employment as a result of protected conduct as opposed to alternative, legitimate, work-related reasons. Matusick v Erie County Water Auth., 757 F3d 31, 47 [2d Cir 2014] "To succeed on . . . First Amendment claims,

8

[the plaintiff] must demonstrate by a preponderance of the evidence that the [conduct] at issue was protected, that he suffered an adverse employment action, and that there was a causal connection between the protected [conduct] and the adverse employment action." Matusick, 757 F3d 47; see Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994). "Should a plaintiff demonstrate these factors, the defendant[s] has the opportunity to demonstrate by a preponderance of the evidence that it would have undertaken the same adverse employment action even in the absence of the protected conduct." Id. (internal quotation marks omitted). The plaintiff may prevail on his Section 1983 claim if he can show that the defendants would not have implemented the same adverse employment actions were it not for their discriminatory motivations. Matusick, 757 F3d 47; see Adler v. Pataki, 185 F.3d 35, 47 (2d Cir. 1999).

As noted in the second amended complaint, there is no indication that the [Deputy Commissioner Trials] was ever presented with evidence that the charges against [plaintiff] were motivated, even in part, by an intent to discriminate, which is at the heart of the [legal] claims here. Nor is there any indication that if the [Deputy Commissioner Trials] had heard this evidence, it would have been within his statutorily defined authority to review that allegation, or that he would have found that [plaintiff's] termination was warranted.

Therefore, [Deputy Commissioner Trials] factual determinations were not identical to the legal claims here. Matusick, 757 F3d 47; see Burkybile, 411 F3d 313 ("The record does not reflect that any constitutional claims were raised at the [NYPD Department Trial], so we do not take these as decided."); see also Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 472 (S.D.N.Y. 2011) ("[A] finding that [p]laintiff was terminated for cause does not bar [p]laintiff's Title VII claim. Even if [p]laintiff cannot dispute the factual findings of the Hearing

9

Officer's decision, [p]laintiff can still prevail if he shows that [d]efendants acted with an improper motive in bringing charges against [p]laintiff.").

POINT II
THE STATED COMPARATOR ALLEGATIONS REGARDING THE DEPARTMENT'S CRIMINAL ASSOCIATION WITH CARDI B SUPPORTS THE PROPOSITION DEFENDANTS' "ARBITRARY" APPLICATION OF THE DISCIPLINARY RULES

The plaintiff alleges, with respect to the department's criminal association with Cardi B, Defendant KEECHANT L. SEWELL and others were not terminated despite engaging in similar conduct. At this stage, in the defendants' motion, it attempts to mislead the Court suggesting that Cardi B was at the NYPD Police Academy due to a Court Order which is absolutely "False." On or about March 10, 2023, Mayor Eric L. Adams in a public release affirmed that the former Chief of Training Juanita Holmes invited Cardi B as a result of her teen advocacy. Assuming this is even true, there's no reason this interaction with Cardi B and others over the years, cannot serve as appropriate comparators. In Graham v. Long Island R.R., 230 F.3d 34 (2d Cir. 2000), the court reversed a district court's grant of summary judgment to an employer who terminated the plaintiff allegedly on the basis of his race. Graham, 230 F.3d at 36. Although the court reiterated the rule that a comparator must be similarly situated in all material respects, Graham, 230 F.3d at 39, it made it clear that this rule does not require a precise identicality between comparators and the plaintiff. "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." And the case law requires that for such evidence to be probative, and therefore to support a jury verdict, there must only be "an objectively identifiable basis for comparability." Graham, 230 F.3d at 40. (internal quotation marks omitted). The court then concluded that the fact that one comparator (who had been treated differently from the plaintiff) had committed fewer infractions than had the plaintiff did not in itself mean that he could not be a comparator. Graham, 230 F.3d at 42-43.

10

POINT III
PLAINTIFF STATES A CLAIM FOR FREEDOM OF SPEECH RIGHT TO INTIMATE
ASSOCIATION

A "categorical approach is inappropriate for dealing with association-rights cases. It fails

to account for the 'broad range of human relationships that may make greater or lesser claims to

constitutional protection from particular incursions by the State.'" Matusick, 757 F3d at 64; *See*

*also* Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of N.Y., 502 F.3d 136, 144 (2d

Cir. 2007) quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 620, 104 S. Ct. 3244, 82 L. Ed. 2d 462

(1984)). Instead, "the question is: Upon a balancing of all pertinent factors, do the state's

interests, and its means of achieving them, justify the state's intrusion on the particular

associational freedom?"

The right to intimate association was first recognized by the Supreme Court in Roberts,

468 U.S. 609, a case brought by a civic organization challenging a Minnesota statute prohibiting

the group from excluding women. Matusick, 757 F3d 65; *See also* Roberts, 468 U.S. 615-17.

The Court addressed the claim under the "constitutionally protected 'freedom of association,'"

which exists in "two distinct senses,": first, the choice to "enter into and maintain certain

intimate human relationships [without] undue intrusion by the State," and, second, the right to

associate with others "for the purpose of engaging in those activities protected by the First

Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of

religion." Matusick, 757 F3d 65; *See also* Roberts, 468 U.S. 617-18. It is the first of these rights -

- the right to intimate association, as opposed to expressive association -- that is the subject of

the Section 1983 claims here.

In Roberts, the Court began by explaining that the right to intimate association is

undergirded by at least two constitutional interests, each related to the protection of individual

11

liberty against state intrusion. Matusick, 757 F3d at 67. *See also* Roberts, 468 U.S. 618-19. First, there is a social interest in preserving such protection: "[C]ertain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs," a process essential to the maintenance of a pluralistic democracy, as these values "foster diversity and act as critical buffers between the individual and the power of the State." Roberts, 468 U.S. 619. Second, the right to intimate association protects individual interests central to the freedom of expression by "safeguard[ing] the ability independently to define one's identity that is central to any concept of liberty." Roberts, 468 U.S. 618-19.

Finally, the Court recognized that the diversity of human relationships necessitated a sliding-scale analysis rather than a bright-line test: "We need not mark the potentially significant points on this terrain with any precision. We note only that factors that may be relevant include size, purpose, policies, selectivity, congeniality, and other characteristics [of an associative relationship] that in a particular case may be pertinent." Roberts, 468 U.S. 620. The Court did not suggest that constitutional protections applied only to the relationships it enumerated. Rather than setting forth an exclusive and definitive list, the Court instead spoke to relationships that "involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experience, and beliefs but also distinctively personal aspects of one's life." Roberts, 468 U.S. 619-20. The Roberts Court provided little guidance as to how to determine whether the right of intimate association has been infringed upon beyond noting that courts must engage in a "careful assessment of where that relationship'" objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." Roberts, 468 U.S. at 620.

Some courts have examined whether the relationship at issue calls for strict or intermediate scrutiny or rational basis review. Matusick, 757 F3d at 59. In the public employer context, others have applied the balancing test set out by the Supreme Court in Pickering v. Board of Education, 391 U.S. 563, 566-68, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), in order to weigh the relative interests of the plaintiff in preserving an intimate relationship and the interests of the state in "promoting the efficiency of the public services it performs through its employees." Matusick, 757 F3d at 59. See Pickering, 391 U.S. at 568 see also Shahar v. Bowers, 114 F.3d 1097, 1103 (11th Cir. 1997) (en banc), cert. denied, 522 U.S. 1049, 118 S. Ct. 693, 139 L. Ed. 2d 638 (1998).

Here, at this juncture, it's unnecessary to choose among those standards to resolve the issues in this case. The NYPD had no legitimate interest in interfering with plaintiff's choice of intimate associations. The Roberts Court's specific reference to marital relationships should not be viewed as a formalistic recognition of a, narrow legal status entitled to protection. Rather, at least to the extent that a relationship of personal 'familial' associations with Roger Jason Stone, Jr., and Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great Again' are within the protections of the First Amendment. Essentially, the NYPD has designated itself as the great "arbiter" of content moderation and affiliation preferences. In other words, the NYPD "subjectively" determines which if any associations are consistent with department policy. Prior to plaintiff's termination, he was a "non-policymaking, non-confidential" government employee in good standing with satisfactory performance. Plaintiff alleges that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN'S condemnation of his protected First Amendment – Freedom of Right to Intimate Association was

13

the sole "motivating factor" which ultimately led to his termination from the NYPD. In other words, the NYPD terminating plaintiff on account of these relationships are blatantly in violation of his right of intimate association. To interfere with plaintiff's constitutional right "on so unsupportable a basis as 'familial' associations so directly subversive of" the constitutional interests at stake, Zablocki v. Redhail, 434 U.S. 374, 398, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978) (Powell, J., concurring in the judgment), that it cannot, under any circumstance be accepted.

Therefore, plaintiff states a claim for violations of his Freedom of Right to Intimate Association in violation of the First Amendment of the United States Constitution.

POINT IV
PLAINTIFF STATES A CLAIM FOR FREEDOM OF SPEECH RIGHT TO POLITICAL ASSOCIATION

The firing of a public employee because of his or her political beliefs or political affiliations infringes on freedom of speech. Dembitsky v Maruca, 1993 US Dist LEXIS 10399 (WDNY July 27, 1993, 91-CV-0503E(F). *See also* Soderbeck v. Burnett County, Wis., 752 F.2d 285, 288 (7th Cir.), *cert. denied,* 471 U.S. 1117, 86 L. Ed. 2d 261, 105 S. Ct. 2360 (1985). Thus "a non-policymaking, non-confidential government employee [cannot] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." Dembitsky, 1993 US Dist LEXIS 10399 at 3. *See also* Elrod v. Burns, 427 U.S. 347, 375, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976) (Justice Stevens concurring). Dembitsky, 1993 US Dist LEXIS 10399 at 3. Where the employee's political affiliation is the sole ground for his or her dismissal the question is whether such affiliation "is an appropriate requirement for the effective performance of the public office involved." Dembitsky, 1993 US Dist LEXIS 10399 at 3. *See also* Branti v. Finkel, 445 U.S. 507, 518, 63 L. Ed. 2d 574, 100 S. Ct. 1287 (1980). Where

14

the articulated reason is other than political affiliation, the employee must show that his or her

political affiliation was a substantial or motivating factor in the decision. <u>Dembitsky,</u> 1993 US

Dist LEXIS 10399 at 3. *See also* <u>Mt. Healthy City Board of Ed. v. Doyle</u>, 429 U.S. 274, 287, 50

L. Ed. 2d 471, 97 S. Ct. 568 (1977). If the employee carries such burden, the public employer

must then show that it would have reached the same decision as to the dismissal even in the

absence of the protected affiliation.

Here, at this juncture, it's unnecessary to choose among those standards to resolve the

issues in this case. The NYPD had <u>no</u> legitimate interest in interfering with plaintiff's choice of

political associations. As in <u>Dembitsky,</u> plaintiff's relationships of personal 'political'

associations with Roger Jason Stone, Jr., and Kristin M. Davis, members of the OATH Keepers,

Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making

America Great Again' are within the protections of the First Amendment. Essentially, the NYPD

has designated itself as the great "arbiter" of content moderation and affiliation preferences. In

other words, the NYPD "subjectively" determines which if any associations are consistent with

department policy. Prior to plaintiff's termination, he was a "non-policymaking, non-confidential"

government employee in good standing with satisfactory performance. Plaintiff alleges that

Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and

JEREMY D. ORENSTEIN'S condemnation of his protected First Amendment – Freedom of

Right to Political Association was the sole "motivating factor" which ultimately led to his

termination from the NYPD. In other words, the NYPD terminating plaintiff on account of these

relationships are blatantly in violation of his right of political association.

Therefore, plaintiff states a claim for violations of his Freedom of Right to Political

Association under the First Amendment of the United States Constitution.

POINT V
PLAINTIFF STATES A CLAIM FOR MONELL

A plaintiff can establish the existence of such a policy or custom by "showing the municipality, alerted to the possible abuse of the disciplinary process in the workplace exhibited deliberate indifference" to the rights of [its employees] because it failed to act when "the need for more or better supervision to protect against constitutional violations was obvious." Jenkins v. City of New York, 2019 U.S. Dist. LEXIS 94364 (E.D.N.Y. Jun. 5. 2019); Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995); see also Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("Monk's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions ... [and this pattern is] sufficiently persistent or widespread as to acquire the force of law."). The municipality's deliberate indifference can be "inferred if prior complaints of misconduct are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents, or if the [municipality's] response is so patently inadequate to the task as to amount to deliberate indifference." Jenkins, 2019 U.S. Dist. LEXIS 94364; Abdulgalil Alwan v. City of New York, 311 F. Supp. 3d 570, 584 (E.D.N.Y. May 1, 2018) (quoting Vann, 72 F.3d at 1049; Reynolds. 506 F.3d at 192-93). Additionally, the plaintiff must show that the municipality's failure to investigate or rectify the situation was "the result of a conscious choice rather than mere negligence... or bureaucratic inaction." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113,128 (2d Cir. 2004) (citing City of Canton Ohio v. Harris, 489 U.S. 378, 389 (1989)).

A plaintiff must also show that the deprivation of his or her constitutional rights was a "reasonably foreseeable consequence of, and substantially caused by, the [municipality's] failure

to supervise." Jenkins, 2019 U.S. Dist. LEXIS 94364; H.H. v. City of New York, 2017 U.S. Dist. LEXIS 124317 (E.D.N.Y. Aug. 7, 2017). "To be reasonably foreseeable, the harm to plaintiff must be of the same general nature as that which a reasonably prudent person in the [municipality's] position should have anticipated in light of its level of supervision" To be sure, a policymaker's failure to act only subjects a municipality to liability when the need for action is so "obvious" that inaction amounts to a choice to perpetuate harm. City of Canton 489 U.S. 390.

Here, based upon the totality of the isolated and collective conduct of Defendant THE CITY OF NEW YORK through its agents Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN, plaintiff has established that municipal policymakers exhibited deliberate indifference by abusing the disciplinary process to investigate and terminate him due to his personal 'familial' and 'political' associations with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the political paradigm of Making America Great Again in violation of the First Amendment – Freedom of Right to Intimate Association, Political Association, and New York Labor Law § 201-d (2)(a) Outside Political Activities due to their blatant "arbitrary" content moderation and affiliation discrimination preferences.

Meanwhile, with respect to the department's criminal association with Cardi B, Defendant KEECHANT L. SEWELL and others were not terminated despite engaging in similar conduct. At this stage, in the defendants' motion, it attempts to mislead the Court suggesting that Cardi B was at the NYPD Police Academy due to a Court Order which is absolutely "False." Moreover, if indeed "false," that would further support plaintiff's Monell claims. In that, on or about March 10, 2023, Mayor Eric L. Adams in a public release affirmed that the former Chief of Training Juanita Holmes invited Cardi B as a result of her teen advocacy. This public

17

statement is in direct conflict with Defendant THE CITY OF NEW YORK'S legal position.

Under the deliberate indifference test, plaintiff has stated claims that (1) policymakers knew to a moral certainty that its employees would confront this this type of situation, (2) the situation presented Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN with a difficult choice of the sort that training, supervision and discipline would have made less difficult, and (3) the wrong choice by an employee in Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN'S position would frequently cause the deprivation of a citizen's constitutional rights.

Therefore, plaintiff states a claim for Monell.

POINT VI
PLAINTIFF STATES A CLAIM FOR POLITICAL ACTIVITIES

It's important to note, other than *ad hominem* attacks, Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN do not address the merits of plaintiff's New York Labor Law claim in their motion papers. Rather, they argue that "plaintiff's First Amendment claims are meritless and therefore, so is the claim pursuant to New York Labor Law § 201-d.

Under New York Labor Law § 201-d (2)(a), "Political activities" shall mean (i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group.

When a plaintiff demonstrates "that his termination was improperly based on his outside political activities," the burden will shift to the defendant to "show[ ] that plaintiff['s] political affiliations and activities did not play a substantial part in its decision." Torres v LaLota, 2017 US Dist LEXIS 129971 [EDNY Aug. 14, 2017, No. CV 15-7097, at *20 (JMA)(AYS)]); Shabbir

18

v. Pak. Int'l Airlines, 2008 U.S. Dist. LEXIS 27957, 2008 WL 938427, at *3 (E.D.N.Y. Apr. 7, 2008)(internal quotation marks omitted, alteration added).

Here, as noted above, plaintiff has sufficiently pled his First Amendment claims. Moreover, given the apparently interrelated nature of the federal claim to [the New York Labor Law], the Court should exercise supplemental jurisdiction over the latter claim with respect to Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN in their individual capacities. LaLota, 2017 US Dist LEXIS 129971 at *21.

Therefore, plaintiff states a claim for political activities.[3]

POINT VII
DEFENDANTS ARE NOT ENTITLED TO DEFENSE OF QUALIFIED IMMUNITY

"The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable, and reduces the general costs of subjecting officials to the risks of trial . . . ." LaLota, 2017 US Dist LEXIS 129971 at *24. See Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985)). 'A public official, when sued in [their] individual capacity, is entitled to qualified immunity from a claim for damages (1) if the conduct attributed to [them] was not prohibited by federal law . . . or (2) where that official action was so prohibited, if the plaintiff's right not to be subjected to such action was not 'clearly established' at the time it was taken. . . ." LaLota, 2017 US Dist LEXIS 129971 at *24. See Vincent v. Yelich, 718 F.3d 157, 166 (2d

---

[3] Under Section 52(1) of the New York County Law, plaintiff was required to file a notice of claim and failed to do so; therefore, consistent with LaLota, 2017 US Dist LEXIS 129971 at *23, plaintiff voluntarily withdraws this legal claim against Defendant THE CITY OF NEW YORK and Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN in their official capacities.

Cir. 2013)(quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). 'A right is 'clearly established' when the contours of the right are sufficiently clear that a reasonable official would understand that what [they][are] doing violates that right." <u>LaLota</u>, 2017 US Dist LEXIS 129971 at *24. (quoting <u>Jackler v. Byrne</u>, 658 F.3d 225, 242 (2d Cir. 2011)). Although there need not be case law directly on point in order for a right to be considered "clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." <u>LaLota</u>, 2017 US Dist LEXIS 129971 at *24. See <u>Ashcroft v. Al-Kidd</u>, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); See also <u>McGowan v. United States</u>, 825 F.3d 118, 124 (2d Cir. 2016) (court may grant qualified immunity on ground that purported right was not clearly established by prior case law without resolving more difficult question of whether purported right exists at all).

Qualified immunity is an affirmative defense which [often] is asserted in a defendant's answer to a complaint and does not support a motion to dismiss pursuant to Rule 12(b)(6). <u>LaLota</u>, 2017 US Dist LEXIS 129971 at *25. See <u>McKenna v. Wright</u>, 386 F.3d 432, 435 (2d Cir. 2004). However, the Second Circuit has permitted the qualified immunity defense to be successfully asserted in the context of a Rule 12(b)(6) motion if it is based on facts which appear on the face of the complaint and "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." <u>LaLota</u>, 2017 US Dist LEXIS 129971 at *25. (quoting <u>Citibank, N.A. v. K-H Corp.</u>, 968 F.2d 1489, 1494 (2d Cir. 1992)). In order for a defendant to prevail on a qualified immunity defense in a 12(b)(6) motion as a opposed to one raised in a motion for summary judgment, [they] must satisfy this more stringent standard. <u>LaLota</u>, 2017 US Dist LEXIS 129971 at *25.

The Second Circuit has rejected qualified immunity defenses raised in motions to dismiss in opposition to First Amendment retaliation claims because such claims require an improper retaliatory motive on the part of the defendant, and "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." LaLota, 2017 US Dist LEXIS 129971 at *25. See Washington v. Gonyea, 538 F. App'x 23, 27 (2d Cir. 2013) (quoting Locurto, 264 F.3d 169.

Here based upon plaintiff's stated claims, it does not appear from the face of the second amended complaint, alone, that Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN are entitled to qualified immunity. Moreover, the Court cannot conclude that the plaintiff "can prove no set of facts in support of his [legal claims] that would entitle him to relief." LaLota, 2017 US Dist LEXIS 129971 at *25. See McKenna, 386 F.3d at 435.

Therefore, Defendants' KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and JEREMY D. ORENSTEIN'S qualified immunity defense is premature and must be denied.

## **CONCLUSION**

Therefore, on the facts and the law, the Court must deny Defendants' THE CITY OF

NEW YORK; KEECHANT L. SEWELL; ERNEST F. HART; DANIEL S. CUTTER and

JEREMY D. ORENSTEIN'S motion to dismiss.

Dated:  April 24, 2023
New York, NY

Respectfully submitted,

By:  _____

Eric Sanders

Eric Sanders, Esq.
**THE SANDERS FIRM, P.C.**
30 Wall Street, 8th Floor
New York, NY 10005
(212) 652-2782 (Business Telephone)
(212) 652-2783 (Facsimile)

Website: http://www.thesandersfirmpc.com