22 Civ. 5109 (FB)(VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SALVATORE J. GRECO,

                              Plaintiff,

- against -

CITY OF NEW YORK, ET AL.,

                              Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants*
   *100 Church Street*
   *New York, N.Y. 10007*

   *Of Counsel: Andrea O'Connor*
   *Tel: (212) 356-4015*
   *Matter No. 2022-053007*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT

        A.       Plaintiff's First Amendment Intimate Association Claim .......................................... 2

        B.       Plaintiff's First Amendment Expressive Association Claim ..................................... 4

        C.       Plaintiff's New York Labor Law Claim....................................................................... 7

        D.       Plaintiff's *Monell* Claim................................................................................................ 8

        E.       Plaintiff's Newfangled Article 78 Claim ..................................................................... 8

        F.       Individual Defendants Are Entitled to Qualified Immunity ........................................ 9

CONCLUSION............................................................................................................................ 10

# PRELIMINARY STATEMENT

The arguments made in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated April 24, 2023 ("Plaintiff's Opposition"), are insufficient to avoid dismissal of the Second Amended Complaint ("SAC"). Plaintiff's irrelevant arguments about the use of "arrest record data," conspiracy-laced musings regarding the Congressional Select Committee to Investigate the January 6, 2021 Attacks on the U.S. Capital and repeated references to recording artist Cardi B's performance of community service at a NYPD facility do nothing to save his constitutional claims.

Even with these sensational arguments, plaintiff is unable to establish a First Amendment violation based on either an intimate association claim or an expressive conduct claim. Plaintiff's Opposition fails to cure the fatal defect with respect to his intimate association claim; namely, that he fails to plead a protected "intimate relationship" that would give rise to a cognizable intimate association claim. This is an end to his intimate association claim. Plaintiff's expressive conduct claim meets the same fate given that the SAC and Plaintiff's Opposition fail to allege that plaintiff engaged in expressive or associational conduct of any sort, let alone ***for the purpose of*** engaging in First Amendment protected activity. Thus, his First Amendment claims fail as a matter of law.

As for plaintiff's claim under § 201-d of the New York State Labor Law, plaintiff is of the mistaken belief that because he has asserted a First Amendment claim, he has also set forth a claim under § 201-d. Not so. Section § 201-d defines "political activities" as (i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group. Plaintiff has not alleged that he engaged in any of those activities. Thus, plaintiff's New York Labor Law claim must be dismissed as a matter of law. Finally, Plaintiff's Opposition does nothing to save

his *Monell* claim against the City because he does not plausibly allege that a municipal policy or custom caused the violation of his constitutional rights and, in any event, the individual defendants in this action are entitled to qualified immunity.

Accordingly, for the reasons outlined below and in defendants' moving papers, defendants respectfully request that the Court grant their motion to dismiss in its entirety.

## ARGUMENT

A.  **Plaintiff's First Amendment Intimate Association Claim**

Contrary to Plaintiff's Opposition, at the motion to dismiss stage, the Court must resolve the threshold question of whether the relationship at issue is entitled to constitutional protection as a matter of law. *Stalter v. Cty. of Orange*, No. 15-CV-5274, 2016 U.S. Dist. LEXIS 104237, at *8 (S.D.N.Y. Aug. 5, 2016). This determination "is necessarily premised upon the description of the relationship in the operative pleadings." *Id.* Thus, at this stage, the Court must determine whether plaintiff has sufficiently alleged that his relationships with Mr. Stone, Ms. Davis and unidentified members of the OATH Keepers, Proud Boys and "others" are the type of highly intimate relationships afforded constitutional protection.

In support of his intimate association claim, plaintiff merely restates that he has a "personal 'familial' association[] with Roger Jason Stone, Jr., Kristin M. Davis, members of the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great' again" that are entitled to constitutional protection. Plaintiff's Opposition at 13. Plaintiff provides no additional description or context as to the nature of these "personal and 'familial' relationships." *See generally* Plaintiff's Opposition. Rather, plaintiff generally argues that intimate association claims can be based on relationships outside of the marital context. On that point, defendants agree. But this general proposition does not save plaintiff's intimate association claim.

Taking first plaintiff's claim that he has a constitutionally protected relationship with unidentified "members of the OATH Keepers, Proud Boys and others who support Trump's America and the 'political' paradigm of 'Making America Great' again," Plaintiff's Opposition does not address the factors delineated by the Supreme Court in *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte* regarding whether an individual's association with a particular group is "personal or private" enough to warrant constitutional protection. 481 U.S. 537, 546 (1987). To be sure, Plaintiff's Opposition is silent as to the "size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship." *Id*. Similarly, the SAC contains no allegations regarding the size or selectively of the OATH Keepers, Proud Boys or "others who support Trump's America," nor does it contain any allegations as to whether others are excluded from "critical aspects of the relationship." Thus, plaintiff, as a matter of law, cannot establish an intimate association claim based on these alleged affiliations.

Turning next to plaintiff's relationship with Mr. Stone, Plaintiff's Opposition does not refute that plaintiff and Mr. Stone were, or are, friends. Plaintiff's Opposition also does not provide any caselaw in which a Court has accepted an intimate association claim based on a friendship. *See generally* Plaintiff's Opposition. Rather, in support of his general proposition that an intimate association claim can be maintained based on non-marital relationships, plaintiff cites to *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31 (2d Cir. 2014). In *Matusick*, the plaintiff, a white male, claimed his employer harassed and terminated him because of his romantic relationship with an African-American woman, Anita Starks, who, at the time of the harassment and termination, was his fiancé. *Id*. at 37-38. In holding that the plaintiff's relationship with Ms. Starks was entitled to constitutional protection, the Court noted that: "they were involved in a long-term romantic relationship, held themselves out as engaged and were recognized as such,

maintained together a relationship with Starks' children, and shared significant features of their private life together in anticipation of marriage." *Id.* at 59-60. Therefore, the Court held that because the relationship was "marked by the same characteristics of deep attachment, commitment, and self-identification that *Roberts* [*v. United States Jaycees*, 468 U.S. 609 (1984)] and its progeny have viewed as characteristic of constitutionally protected intimate association." *Id.* at 59.

The same cannot be said for plaintiff's vague "personal and familial" relationship with Mr. Stone. The SAC alleges that plaintiff provided deposition testimony to the Congressional Select Committee to Investigate the January 6th Attack on the U.S. Capitol and in that deposition testified that he and Mr. Stone are "friends and family since 2018." *See* SAC at ¶ 89. Plaintiff and Mr. Stone, however, are not family. Nor has plaintiff alleged that his relationship with Mr. Stone is based on the "creation and sustenance of a family" - given that marriage, childbirth, the raising and education of children, and cohabitation are not alleged to exist here. *See Roberts*, 468 U.S. at 619. Here, the allegations regarding plaintiff's relationship with Mr. Stone demonstrate that, at best, they are close friends. This friendship, however close, is not afforded constitutional protection.

Finally, with respect to plaintiff's alleged relationship with Ms. Davis, the allegations are even more sparse. In fact, with respect to Ms. Davis, plaintiff only repeats the boilerplate allegation that he has a "personal 'familial' and 'political' relationship" with Ms. Davis with no other details whatsoever. Thus, lacking specifics, plaintiff's relationship with Ms. Davis cannot be afforded constitutional protection.

**B.     Plaintiff's First Amendment Expressive Association Claim**

As with plaintiff's intimate association claim, his expressive association claim fails as a matter of law. Plaintiff's Opposition argues that a public employee cannot be terminated

solely because of his political beliefs. *See* Plaintiff's Opposition at 14-15. This perfunctory assertion does nothing to save plaintiff's expressive association claim for two reasons.

First, the SAC contains absolutely no allegations regarding plaintiff's political beliefs or activities. Plaintiff does not allege that he "supports Trump's America and the political paradigm of Making America Great Again." Nor does plaintiff allege that he is or was a member or supporter of the OATH Keepers and/or the Proud Boys. Plaintiff goes so far as to affirmatively state in his SAC that he "knew nothing about whether [Mr.] Stone assisted President Donald J. Trump with the 2020 Presidential election." SAC at ¶ 91. These glaring omissions coupled with plaintiff's complete ignorance as to Mr. Stone's political activities are fatal to plaintiff's claim that he was terminated *because of* some unspecified political beliefs or activities.

Even the 1993 Western District of New York decision that plaintiff relies heavily on in his opposition fails to resuscitate his expressive activity claim. In *Dembitsky v. Maruca*, 91-CV-0503E(F), 1993 U.S. Dist. LEXIS 10399 (W.D.N.Y. July 27, 1993), the plaintiff alleged that members of the Town Board for the Town of Niagara voted to abolish his position, thereby terminating his employment, because he publicly supported the Board members' political adversaries. *See* 1993 U.S. Dist. LEXIS 10399 at *14-15. In dismissing the plaintiff's First Amendment claim, the Court held that the "connection between [plaintiff's] political affiliation and the abolishment of his position [wa]s too tenuous." *Id.* at *20. The same can be said here given that plaintiff has not alleged what his political affiliations are and has no knowledge of Mr. Stone's political activities.

Second, plaintiff's argument that he was terminated *solely* because of his political beliefs is demonstrably false. Plaintiff was not terminated because of his political beliefs. Rather, he was terminated because he violated the Patrol Guide by knowingly associating with convicted

5

felons and providing armed security for a convicted felon. *See* O'Connor Decl. Ex. B, Report and Recommendation, dated June 10, 2022, at p. 25. To be sure, the SAC confirms that plaintiff was knowingly associating with convicted felons, i.e. Mr. Stone and Ms. Davis, and therefore it is undisputed that plaintiff engaged in the misconduct that led to his termination. Thus, plaintiff's own pleading does not support his argument that he was terminated solely because of his unidentified political beliefs.

Furthermore, and as detailed in defendants' moving brief, plaintiff does not allege that he engaged in any constitutionally protected expressive or associational conduct. The SAC contains no allegations that plaintiff was associating with Mr. Stone, Ms. Davis and/or members of the OATH Keepers and Proud Boys ***for the purpose of*** engaging in First Amendment protected activity, namely speech, assembly, petition for the redress of grievances, and the exercise of religion. In fact, the SAC does not detail any conduct or speech engaged in by plaintiff or these individuals and groups whatsoever, let alone expressive activity entitled to First Amendment protections. This is an end to his expressive association claim as a matter of law.

Plaintiff's Opposition completely ignores defendants' argument that even if plaintiff had alleged some expressive conduct or speech, he fails to allege any facts demonstrating that such conduct or speech was on a matter of public concern. Plaintiff's friendship with Mr. Stone and Ms. David are not of public concern. Similarly, the fact that the NYPD's investigation revealed that plaintiff's Instagram account contained pictures of himself with members of the OATH Keepers and Proud Boys and that he was present in a hotel room with members of OATH Keepers on January 5, 2021 is not of public concern. Given that this is the only arguable expressive conduct even remotely articulated in the SAC, his expressive conduct claim must fail.

Finally, Plaintiff's Opposition also ignores defendants' argument that even assuming plaintiff had articulated some expressive conduct or speech ***and*** alleged that such conduct or speech was on a matter of public concern, his claim still fails because when an employee's speech on a matter of public concern is sufficiently disruptive to government operations such that the disruption outweighs the value of the speech, a public employer may take an adverse employment action against the employee. *See Pickering v. Board of Education*, 391 U.S. 563, 568 (1968); *Blackman v. New York City Transit Authority*, 491 F.3d 95 (2d Cir. 2007). Here, defendants acted out of a reasonable concern that plaintiff's association with convicted felons and groups advocating hatred and/or the overthrow of the U.S. Government had the potential to disrupt the NYPD's mission "to enhance the quality of life in New York City by working in partnership with the community to enforce the law, preserve peace, protect the people, reduce fear, and maintain order." *See* NYPD Mission Statement at https://www.nyc.gov/site/nypd/about/about-nypd/mission.page (last accessed Apr. 17, 2023). Therefore, under *Pickering*, the NYPD was reasonable in taking action against plaintiff for wrongfully and knowingly associating with an individuals who engaged in criminal activities given the disruption this association can cause. Thus, Plaintiff's expressive association claim fails as a matter of law.

C. **Plaintiff's New York Labor Law Claim**

Plaintiff's Opposition does not address defendants' argument there are no allegations in the SAC that plaintiff engaged in "political" activities outside his working hours that would receive protection under New York State Labor Law § 201-d. Rather, Plaintiffs' Opposition puzzlingly attributes an argument and a quote to defendants that does not appear in defendants' moving brief. As such, defendants respectfully refer the Court to the actual arguments made in their moving brief in connection with plaintiff's § 201-d claim.

**D.  Plaintiff's *Monell* Claim**

For municipality liability to attach under § 1983, a plaintiff must prove that a policy or custom caused a violation of their constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). Even where a plaintiff is able to identify a policy or custom, unconstitutional acts carried out by a municipality's employees may not alone render the municipality liable. *See Sorlucco v. N.Y.C. Police Dep't.*, 971 F.2d 864, 870 (2d Cir. 1992). Plaintiff must establish a causal connection – an "affirmative link" – between the policy and deprivation of a constitutional right. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Municipal liability will not attach unless the policy was the basis of plaintiff's constitutional deprivation. *See Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (a municipal liability claim requires plaintiff to show that the city made a deliberate choice, implemented through the policy or custom alleged, that acted as the "moving force" behind the constitutional violation), *overruled on other grounds by Leatherman v. Tarrant Co. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993). Where, as here, there is no constitutional violation, there can be no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (a municipality is not liable under § 1983 where no constitutional violation occurred).

**E.  Plaintiff's Newfangled Article 78 Claims**

It appears as though Plaintiff's Opposition is now attempting to restyle his constitutional claims as one sounding in the arbitrary and capricious standard typically applied to proceedings brought pursuant to CPLR Article 78.  In so doing, Plaintiff's Opposition argues that defendants' decision to terminate plaintiff based on his knowing association with convicted felons and his provision of armed security for a convicted felon is arbitrary given that the NYPD did not terminate those responsible for permitting the recording artist Cardi B access to a NYPD facility

to perform community service. In so doing, it appears as though plaintiff is arguing that defendants themselves violated Patrol Guide § 203-10(2)(c) by permitting this community service to occur in the presence of NYPD officers. Permitting community service to be performed in the presence of NYPD officers is completely dissimilar to actively seeking out and maintaining a voluntary friendship with a convicted felon and then performing armed security duties for the same felon.

Further, plaintiff's newly asserted claim that his termination was "arbitrary and capricious" because the NYPD disciplined him but not those involved in the Cardi B incident is entirely belied by the evidence plaintiff presents in opposition to this motion. The news articles submitted by plaintiff demonstrate that the NYPD personnel who – according to plaintiff – was responsible for arranging for Cardi B to visit an NYPD facility is no longer employed by the NYPD. Thus, even if the Court were to consider this sensational argument, it is without merit and, nevertheless, would be time-barred by the four-month statute of limitations applicable to the Article 78 claim essentially advanced here.

**F.  The Individual Defendants are Entitled to Qualified Immunity**

The qualified immunity doctrine protects government officials from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known about. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks omitted). Here, given that the NYPD followed proper protocols in investigating and charging plaintiff and that the findings against plaintiff were supported by evidence after a full adversarial hearing, it was objectively reasonable for the individual defendants herein to rely on those findings and believe they were acting lawfully and in accord with the evidence adduced through the appropriate processes. Thus, there was simply no way the individual defendants could have understood that disciplining plaintiff for his ***admitted*** misconduct was

9

allegedly unconstitutional. Thus, all claims against defendants Sewell, Hart, Cutter and Orenstein individually must be dismissed.

## **CONCLUSION**

For the foregoing reasons, and for those set forth in defendants' moving papers, defendants respectfully request that the Court grant their motion to dismiss the SAC, that the SAC be dismissed in its entirety and that defendants be granted costs, fees, and disbursements together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
                June 8, 2023

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-100
New York, New York 10007-2601
(212) 356-4015
aoconnor@law.nyc.com

By:   *Andrea O'Connor*
            Andrea O'Connor
       Assistant Corporation Counsel