UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALVATORE J. GRECO,<br><br>        Plaintiff,<br><br>  -against-<br><br>THE CITY OF NEW YORK; KEECHANT L. SEWELL, as Police Commissioner, Police Department City of New York; ERNEST F. HART, as Deputy Commissioner Legal Matters, Police Department City of New York; DANIEL S. CUTTER, as Commanding Officer, Internal Affairs Bureau Group No.: 25 and JEREMY D. ORENSTEIN, as Sergeant, Internal Affairs Bureau Group No.: 25, each sued individually and in their official capacities as employees of The City of New York,<br><br>        Defendants. | **MEMORANDUM AND ORDER**<br><br>Case No. 22-CV-5109 (FB) (VMS) |

*Appearances:*
*For the Plaintiff*:
ERIC SANDERS
The Sanders Firm, P.C.
30 Wall Street, 8th Floor
New York, NY 10005

*For Defendant*:
SYLVIA O. HINDS-RADIX
Corporation Counsel for the
  City of New York
By: ANDREA O'CONNOR
100 Church Street, Room 2-140
New York, NY 10007

**BLOCK, Senior District Judge:**

    Plaintiff Salvatore J. Greco ("Greco"), a former police officer for the New York City Police Department ("NYPD"), brought this action against the City of

1

New York, the NYPD, and NYPD officials Keechant L. Sewell, Ernest F. Hart, Daniel Cutter, and Jeremy Orenstein (collectively, "Defendants") under 42 U.S.C. § 1983 and New York Labor Law § 201-d. He claims Defendants violated his First Amendment rights by investigating and firing him "due to his personal 'familial and 'political' relationships with Roger Jason Stone, Jr. ["Stone"], Kristin M. Davis ["Davis"], members of the OATH Keepers, Proud Boys and others" who support former president Donald Trump. Second Amended Complaint ("SAC") 1. Defendants now move to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## I. SUMMARY OF THE ALLEGATIONS

In January 2021, the NYPD's Internal Affairs Bureau Command Center received anonymous tips that Greco had attended riots at the United States Capitol in Washington, D.C. on January 6, 2021. After an investigation, the NYPD charged Greco with the following disciplinary infractions on April 27, 2021:

> 1. [Greco], on or about and between January 1, 2018 and March 22, 2021, wrongfully and knowingly associated with a person, Roger Stone, reasonably believed to be engaged in, likely to engage in or to have engaged in criminal activities.
> . . .
> 2. [Greco], on or about and between January 5, 2021 and January 6, 2021, wrongfully engaged in conduct prejudicial to good order, efficiency, or discipline of the Department by, while armed, acting as security for a person or persons convicted of a crime.
> . . .

2

> 3. [Greco], on or about January 25, 2021, and/or March 22, 2021, wrongfully failed to fully cooperate with Internal Affairs Bureau investigators by providing incomplete or inaccurate answers or by being evasive or uncooperative during a Department interview.
> . . .
> 4. [Greco], on or about and between July 1, 2019, and March 22, 2021, wrongfully and knowingly associated with any person or organization advocating hatred, oppression, or prejudice based on race, religion, gender, gender identity/expression, sexual orientation, or disability.
> . . .
> 5. [Greco], on or about and between January 1, 2018 and March 22, 2021, wrongfully and knowingly associated with a person, Kristin Davis, reasonably believed to be engaged in, likely to engage in or to have engaged in criminal activities.

Dkt. No. 30, Aff. in Support at Ex. B, Report and Recommendation at 2-3 ("R&R").[1]

At his ensuing NYPD disciplinary trial, Greco testified that he had befriended Stone in 2018 after commenting on his Instagram posts, eventually meeting Stone and Davis in person that same year. Greco described himself and Stone as "very close friends." R&R at 14. He continued his friendship with Stone after Stone was convicted of multiple federal criminal offenses in November 2019. Greco attended Stone's sentencing hearing for those crimes and continued contact

---

[1] Greco references the R&R, which summarized his charges and the NYPD's disciplinary findings, in his Second Amended Complaint. He is also presumed to have knowledge and possession of it as its recipient and relies on it in bringing the present action. SAC ¶ 71, 74-75, 78. It is therefore properly considered on Defendants' motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (courts may consider on a motion to dismiss documents plaintiff referred to in the complaint, possessed, and relied on "in drafting the complaint").

3

with Stone and Davis afterward, testifying that he was aware that both had criminal records.

Greco testified that he accompanied Stone and Davis in Washington, D.C. on January 5 and 6 of 2021. He drove Stone and Davis to their hotel on January 5, 2021, along with Joshua James, "a co-founder of the OATH Keepers, which is an alleged American far-right anti-government militia." SAC ¶ 52. Defendant Jeremy Orenstein, an NYPD internal affairs bureau sergeant who investigated Greco, testified that James described himself as "the head of Roger Stone's security detail" on January 5 and 6. Ex. B at 6. James added that Greco had come to Washington to assist the security detail. Greco denied being a part of Stone's security detail in his trial testimony.

Greco also testified that he accompanied Stone to a barbershop while carrying his concealed NYPD-issued off-duty firearm. Greco and James then attempted to obtain for Stone tickets to a speech by President Trump. Greco presented his NYPD identification to Secret Service Agents as a part of this attempt. Stone ended up not attending the event, and Greco drove Stone back to the airport to leave Washington.

On June 10, 2022, NYPD Assistant Deputy Commissioner Paul M. Gamble issued a Report and Recommendation finding Greco guilty of specifications 1, 2, 3, and 5, and not guilty of specification 4. He found Greco guilty of Specifications 1

and 5 because Greco admitted to keeping up contact with Stone and Davis despite knowing of their criminal history. Regarding Specification 2, Gamble found that Greco had in fact aided Stone's security detail, including while armed, despite his testimony to the contrary. He noted that "providing armed security for a person convicted of a crime was prejudicial to [the NYPD's] good order, efficiency, and discipline," as it "raises serious questions about that officer's ability to maintain the public's trust." R&R at 25. Gamble found Greco guilty of Specification 3 because he failed to cooperate with the NYPD's investigation into him. Finally, in dismissing Specification 4, Gamble found insufficient evidence that Greco knew he was associating with members of organizations advocating hatred or prejudice.

Gamble concluded that Greco will likely "forever be compromised in the eyes of the public and his fellow police officers," and that he was "guided by his own moral compass rather than the provisions of the Patrol Guide." R&R at 25, 32. Gamble found that Greco's continued service with the NYPD "would be corrosive to the mission and values of [the] Department" and recommended his termination. R&R at 32. Gamble's recommendation was adopted by then-Commissioner Sewell and Greco was terminated on August 4, 2022.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

5

plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] court may consider the complaint as well as any written instrument attached to [the complaint] as an exhibit" in making this determination. *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation omitted).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. "[T]he proper question is whether there is a permissible relevant inference from all of the facts alleged, taken collectively, not whether an inference is permissible based on any individual allegation, scrutinized in isolation." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation omitted). Defendants challenge each of Greco's claims.

### III. DISCUSSION

#### a. Greco's First Amendment Claims

The First Amendment protects two forms of association. The right to private

or intimate association preserves the freedom to "enter into and maintain certain intimate human relationships [without] undue intrusion by the State," while the right to expressive or political association protects the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees,* 468 U.S. 609, 617-18 (1984). Greco alleges that Defendants infringed his rights to both intimate and expressive association by investigating and firing him.

### 1. Intimate Association

Defendants argue that Greco fails to allege a protected intimate relationship with Stone, Davis, or others. The right to intimate association protects "highly personal relationships" and "personal bonds" that "foster diversity and act as critical buffers between the individual and the power of the State." *Roberts*, 468 U.S. at 618-19. Accordingly, a relationship, evaluated as described in the pleadings, must be "sufficiently personal or private to warrant constitutional protection." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987); *Stalter v. Cnty. of Orange*, No. 15-CV-5274 (NSR), 2016 WL 8711397, at *8 (S.D.N.Y. Aug. 5, 2016). Though there is no "bright-line test" for which relationships qualify, *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 58 (2d Cir. 2014), protected relationships generally include "those that attend the

7

creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives," *Roberts*, 468 U.S. at 618-19. Relevant factors include "cohabitation and the precise degree of kinship," *Berrios v. State Univ. of New York at Stony Brook*, 518 F. Supp. 2d 409, 418 (E.D.N.Y. 2007), and whether the relationship "share[s] the characteristics that set family relationships apart—small, select, and secluded from others," *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997).

Although the Second Circuit has not explicitly ruled out protection for friendships, *see Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002) (leaving open "whether the right to intimate association extends to friendships"), district courts have declined to recognize them as qualifying intimate associations, *see Silverstein v. Lawrence Union Free Sch. Dist. No. 15*, No. CV-10-993-SJF-WDW, 2011 WL 1261122, at *6 (E.D.N.Y. Feb. 15, 2011) (collecting cases); *Berrios*, 518 F. Supp. 2d at 418 ("Where, as here, the relationship sought to be protected falls outside the familial arena, it has been held to be not . . . protected."); *Gross v. City of Albany*, No. 14-CV-736, 2015 WL 5708445, at *10 (N.D.N.Y. Sept. 29, 2015) ("friendships, however close, are insufficient to state a claim under the First Amendment"); *Maselli v. Tuckahoe Union Free Sch. Dist.*, No. 17-CV-1913 (KMK), 2019 WL 3456581, at *4-5 (S.D.N.Y. July 31, 2019) (denying protection for siblings-in-law "who are not married, romantically involved, or biologically

8

related"); *Dupont v. New Jersey State Police*, No. 08CIV10220(DLC), 2009 WL 2486052, at *9 (S.D.N.Y. Aug. 14, 2009) (granting qualified immunity for alleged infringement of right to intimate association where "[t]here was no clearly established law in 2006 and 2007 protecting friendship . . . as a form of intimate association").

Here, Greco pleads only conclusory allegations that he enjoys a "personal 'familial' and 'political' relationship" with Davis, providing no other details. SAC ¶ 72, 77. Regarding Stone, Greco claims to have been "very close friends" and "friends and family since 2018." SAC ¶ 89; R&R at 14. They communicated over Instagram and text message and met several times, including at the Capitol on January 5 and 6, 2021. He does not claim to have cohabitated with Stone or Davis or undertaken any other activities together "that attend the creation and sustenance of a family." *Roberts*, 468 U.S. at 618-19. As such, Greco's relationships with Stone and Davis fall squarely "outside of the familial arena" and are not protected by the right to intimate association. *Berrios*, 518 F. Supp. 2d at 418; *see Silverstein*, 2011 WL 1261122, at *7 (E.D.N.Y. Feb. 15, 2011) (denying protection for "platonic friendship, even a long standing one of great intimacy."); *Gallagher v. Bd. of Educ. of E. Hampton Union Free Sch. Dist.*, No. 16CV473SJFSIL, 2017 WL 8813134, at *8 (E.D.N.Y. Dec. 21, 2017) (denying protection for workplace friendship where plaintiff failed to plead "additional facts

9

that would support a familial level of closeness"). Finally, Greco does not claim to have had any relationships, let alone intimate ones, with particular members of the groups he associated with, including "OATH Keepers, Proud Boys and others." SAC ¶ 73. Because Greco does not allege that he had sufficiently intimate relationships with Stone, Davis, or these groups, his intimate association claim must be dismissed.

### 2. Expressive Association

The right to expressive association protects the "freedom to speak, to worship, and to petition the government for the redress of grievances." *Roberts*, 468 U.S. at 622. Under this right, public employees retain "their First Amendment rights to comment on matters of public interest." *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). The right to "associate for expressive purposes is not, however, absolute." *Roberts*, 468 U.S. at 623. "[T]he threshold question for a public employee's claim of freedom of expressive association" is borrowed from that of free speech retaliation claims: "whether the employee's expressive conduct is as a citizen on a matter of public concern." *McDonald v. Hempstead Union Free Sch. Dist.*, No. 18CV5658DRHSIL, 2019 WL 2716179, at *8 (E.D.N.Y. June 28, 2019) (citing *Piscottano v. Murphy*, 511 F.3d 247, 268, 271 (2d Cir. 2007)).

A plaintiff must therefore plead that he engaged in associational conduct that touched on a matter of public concern to survive a motion to dismiss, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 395 (2d Cir. 2018) (citing Garcetti, 547 U.S. 410, 418 (1951)). This is a question of law. *Connick v. Myers*, 461 U.S. 138, 150 n.10 (1983). "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication," including "certain private remarks, such as negative comments about the President of the United States." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004); *see Connick*, 461 U.S. at 146 (speech must relate to "any matter of political, social, or other concern to the community").

Taking all reasonable inferences in favor of Greco, the Second Amended Complaint sufficiently alleges that he engaged in expressive conduct that touched on a matter of public concern—namely, the 2020 Presidential election. Greco claims that his associations with Stone, Davis, OATH Keepers, and Proud Boys centered on a political movement supporting President Donald Trump. Greco accompanied Stone and Davis and interacted with the OATH Keepers and Proud Boys leading up to and during the riots in Washington on January 6, 2023, which were explicitly political in nature. Greco alleges expressive conduct including making comments on Stone's Instagram page, posting Instagram photos with himself, Stone, and Davis, and discussing Stone's plans to attend a speech by

11

President Trump. The NYPD's Report and Recommendation indicates that Greco was in Washington "assisting" Stone's security detail. R&R at 6. Greco's associations with Stone and Davis surrounding their trip to Washington were plainly in furtherance of aiding their participation in politically motivated gatherings on January 6.

Indeed, Greco was subpoenaed by and provided deposition testimony to a committee convened by the House of Representatives to investigate the riots that culminated from these rallies. Greco was deposed on May 16, 2022, by the Select Committee to Investigate the January 6th Attack on the United States Capitol, testifying about messages he exchanged with Stone and Davis, as well as "their associations with each other and connections to Infowars [sic] Alex Jones and other related political connections." SAC § 87. Greco incorporates via reference in his Second Amended Complaint the Select Committee's final report, which highlights the role of Proud Boys, Oath Keepers, and Stone in the politically charged demonstrations and riots. SAC § 93; *see* Final Report, Select Committee to Investigate the January 6th Attack on the United States Capitol, https://www.congress.gov/117/crpt/hrpt663/CRPT-117hrpt663.pdf (accessed July 25, 2023), 1, 5, 55-58, 60-63, 112, 133, 499-505, 507-19, 535, 638, 640-60, 666-69. Greco therefore sufficiently pleads that his associations addressed a matter of public concern.

12

Defendants next argue that Greco's allegations fail the *Pickering* balancing test, which balances employees' interest in free expression with their employers' interest in "promoting the efficiency of the public services." *Cobb*, 363 F.3d at 101. But the "[t]he *Pickering* test is 'a fact-sensitive inquiry'" which is not suited for resolution on a motion to dismiss. *Squicciarini v. Village of Amityville*, No. 17-CV-6768, 2019 WL 1232093, at *9 (E.D.N.Y. Mar. 15, 2019) (quoting *Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 298 (E.D.N.Y. 2009)); *see Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994) ("the motive behind [plaintiff's] firing in his retaliation claim is clearly a question of fact. Because this question is in dispute, it was improper for the district court to answer it on a motion for dismissal on the pleadings"). "Here, on this undeveloped record, the Court cannot readily discern every interest at play in this case, or how those interests weigh against one another." *Sugar v. Greenburgh Eleven Union Free Sch. Dist.*, No. 18 CV 67 (VB), 2018 WL 6830865, at *7 (S.D.N.Y. Dec. 28, 2018). Nor are Defendants likely to satisfy their burden under the test at a stage where the Court is limited to considering the pleadings. *Id.* (citing *Sassone v. Quartararo*, 598 F. Supp. 2d 459, 468 (S.D.N.Y. 2009)). This inquiry is better suited for summary judgment or trial.

13

### 3. Municipal Liability

A § 1983 plaintiff suing a municipality or individual officers in their official capacity must allege that their injury was caused by an official policy or custom. *Montero v. City of Yonkers, New York*, 890 F.3d 386, 403-04 (2d Cir. 2018) (citing *Monell v. Dep't of Social Serv. of the City of N.Y.*, 436 U.S. 658, 690-91 (1978)). Specifically, they must plead "(1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) (cleaned up). A policy or custom "may be shown through 'the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 362 (S.D.N.Y. 2021) (quoting *Connick*, 563 U.S. at 61). "[T]he mere assertion that a municipality has such a custom or policy" without "allegations of fact tending to support, at least circumstantially, such an inference" is insufficient. *Montero*, 890 F.3d at 403-04 (cleaned up). So is a single incident of a constitutional violation. *Mitchell v. City of New York*, 841 F.3d 72 (2d Cir. 2016). Plaintiffs must allege "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022) (internal quotation omitted).

Greco claims that his unconstitutional termination was a foreseeable consequence of the City's failure to supervise the NYPD's disciplinary decisions. He alleges that his firing was part of a forty-year practice of the NYPD in which officials used disciplinary decisions to discriminate against

> NYPD Captain now Mayor Eric L. Adams, former NYPD Sergeant now Sheriff Anthony Miranda, members of the Guardians Association of the Police Department City of New York, Hispanic Society of the Police Department City of New York, and other disenfranchised members of the department including Greco because of their race, gender, 'familial' and 'political' relationships.

SAC ¶ 119. Greco also points to a 2019 report by an NYPD committee recommending that the NYPD address bias in its disciplinary process on the basis of race and nationality, and that transparency be improved.

Greco fails to allege that his injuries were caused by a policy, custom, or practice of the NYPD. He argues in his opposition brief that his firing resulted from a failure to train and supervise to which the NYPD exhibited deliberate indifference, but this allegation appears nowhere in the Second Amended Complaint, and Greco fails to explain how a lack of supervision led to his firing. To proceed on a deliberate-indifference theory, a plaintiff must first establish "that the need for more or better supervision to protect against constitutional violations was obvious." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004). To the extent that Greco raises the 2019 report in order to allege an obvious

15

need for supervision, he pleads no facts that plausibly link this need to the sort of constitutional violation he claims he was subjected to.

The Second Amended Complaint alleges that NYPD disciplinary decisions discriminated for 40 years against a wide range of individuals and groups—an accusation so broad and unelaborated that it fails to identify a specific policy or practice that could plausibly be linked to his firing. Greco fails to allege specific facts about this wide-ranging discrimination, including how targeting disenfranchised members of the NYPD or those with political relationships led to his discipline, in what sense these members were disenfranchised, or what sort of political relationships were targeted. Nor does he allege being a member of any of the racial or national groups that he claims were discriminated against.

Because Greco fails to plausibly allege municipal liability, his claims must be dismissed insofar as they are lodged against New York City and individual defendants in their official capacities.

**4. Qualified Immunity**

Qualified immunity bars claims for damages against government officials sued individually for conduct undertaken in their official capacities. *Ziglar v. Abbasi*, 582 U.S. 120, 150-51 (2017). Qualified immunity is designed to balance the "competing interests" of allowing an "avenue for vindication of constitutional guarantees," and providing "breathing room" for government officials "to make

16

reasonable but mistaken judgments about open legal questions." *Id.* (internal quotations omitted). As a result, suits are barred against "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation omitted). To survive a qualified immunity defense, a plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022) (cleaned up). Each of the individual Defendants invokes qualified immunity here.

Because the Court has already found that Greco states a § 1983 claim for the violation of his First Amendment right to expressive association, the first step of the qualified immunity inquiry is complete. The Court now turns to whether Plaintiffs' rights were clearly established under contemporary law. A right is "clearly established" if "it would be clear to a reasonable officer [in the position of the defendant] that his conduct was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 202 (2001), "consider[ing] Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct," *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016). "[E]ven if the right was 'clearly established,'" a Court can still bar a suit where "it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

17

Because qualified immunity is an affirmative defense, "as a general rule," it "cannot support the grant of a Rule 12(b)(6) motion." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020). "[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch," and "is usually not successful." *Id.* at 111 (internal quotations omitted). Accordingly, "the facts supporting the defense" must "appear on the face of the complaint" and "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 110 (internal quotation omitted).

"The Second Circuit has rejected qualified immunity defenses raised in motions to dismiss in opposition to First Amendment retaliation claims." *Torres v. LaLota*, No. CV157097JMAAYS, 2017 WL 4457514, at *9 (E.D.N.Y. Aug. 14, 2017), *report and recommendation adopted*, No. 15CV7097JMAAYS, 2017 WL 4443578 (E.D.N.Y. Sept. 30, 2017). This is because retaliation claims like Greco's require an improper retaliatory motive on the part of the defendant, and "'where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.'" *Washington v. Gonyea*, 538 F. App'x 23, 27 (2d Cir. 2013) (quoting *Locurto v. Safir,* 264 F.3d 154, 169 (2d Cir. 2001)).

18

Here, Greco's First Amendment claim turns on the subjective intent that NYPD officials had when they investigated and terminated him. *See Cobb*, 363 F.3d at 101-02 (associational freedom claims for public employees ultimately turn on "the reason for the adverse employment action"). Subjective intent as an element of expressive association claims was clearly established at least as far back as *Cobb* in 2004, well before Greco was fired. Because Greco has sufficiently alleged an expressive association claim, which has as an element the subjective intent of his employer, qualified immunity is inappropriate at this stage. Greco's expressive association claim therefore stands with respect to Defendants Sewell, Hart, Cutter, and Orenstein in their individual capacities.

**b. Greco's New York Labor Law Claim**

New York State Labor Law § 201-d prohibits discrimination on the basis of "political activities" undertaken by an employee outside of working hours. N.Y. Labor Law § 201-d(2)(a). Protected political activities under § 201-d include "(i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group." N.Y. Labor Law § 201-d(1)(a).

Greco does not allege that he was investigated or fired because he ran for office, campaigned for a political candidate, or engaged in political fundraising. He argues that because he has successfully pleaded a First Amendment claim, his New

19

York Labor Law claim must also stand. But § 201-d(1)(a) is a state law separate and apart from § 1983. It has its own pleading standards that Greco must independently satisfy. He has failed to do so here, and his labor law claim is therefore dismissed.

## IV. CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Greco's § 1983 First Amendment intimate association claim and his New York Labor Law claim are dismissed. His § 1983 First Amendment expressive association claim is dismissed as to the City of New York and all other Defendants in their official capacities; it stands as to Defendants Sewell, Hart, Cutter, and Orenstein in their individual capacities.

**SO ORDERED.**

                                                  /S/ Frederic Block
                                                  FREDERIC BLOCK
                                                  Senior United States District Judge

Brooklyn, New York
August 8, 2023